Kattelman, Appellant, *v.* National Union Fire Insurance Company.

Argued April 30, 1964.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Louis Kattelman,* with him *Martin Greitzer,* for appellants.

*Norman Paul Harvey,* with him *John J. McDevitt, 3rd,* for appellee.

OPINION BY MR. JUSTICE EAGEN, July 1, 1964:

The plaintiffs, Leon Kattelman and Phyllis, his wife, sued the defendant, the National Union Fire In-

surance Company, in assumpsit, to recover for damage to their dwelling, which was insured against collapse by the extended coverage endorsement in a fire insurance policy issued by the defendant. The case was tried before a judge without a jury, resulting in a finding for the plaintiffs. Subsequently, exceptions filed by the defendant were sustained and judgment entered for the defendant. The plaintiffs appealed.

The facts are not in dispute:

The dwelling house of the plaintiffs is located on Parma Road, Philadelphia. All of the buildings in the immediate area are constructed upon a filled bed and every two houses are built on a concrete mat resting on the fill. Plaintiffs' house was so situated that it rested partly on one mat and partly on another.

On the date involved, one of the mats underneath plaintiffs' dwelling suddenly dropped from its position, while the other remained firm. This caused a twisting action in the foundation and substantial damage to the building. A large number of cracks of sizeable proportions appeared in the inside walls; doors were jammed; plaster fell from the ceilings; a break occurred in one of the outside walls and the building itself broke away from the party wall of the adjoining building. However, the building remained standing and intact; none of the floors, walls or roof fell in.

The legal question for determination is the meaning of the word "collapse" as used in the pertinent provision of the insurance contract, and whether or not the damage described is included within the meaning of the term. In the policy "collapse" is defined thusly: "Loss by collapse shall mean only *physical injury to or destruction of the described property resulting from the collapse of floor(s), wall(s), or roof(s) of the described building(s),* but not collapse caused by or resulting from subsidence . . ." (Emphasis supplied.)

Since the terms of coverage involved are clear, simple and unmistakable, the words are to be construed in accordance with their plain and ordinary meaning. We cannot ascribe thereto an interpretation not expressed. See, *Robinson v. Stover*, 320 Pa. 308, 182 A. 145 (1936); *Ehrlich v. U. S. Fid. & Guar. Co.*, 356 Pa. 417, 51 A. 2d 794 (1947); *Waldman v. Shoemaker*, 367 Pa. 587, 80 A. 2d 776 (1951).

So read, it is clear that the physical injury to the building involved did not result from a "collapse" of a floor, wall or roof thereof. To hold that the cracks or holes in the walls was tantamount to a collapse thereof would constitute a tortured construction of the contract and go far beyond the intention of the parties, as expressed in the clear and unequivocal language thereof.

The case of *Skelly v. Fidelity and Cas. Co.*, 313 Pa. 202, 169 A. 78 (1933), is analogous and controlling. Therein a large hole in two outer walls of a building caused by the impact of a runaway railroad car was held not to amount to a " 'collapse of the outer walls of the building' " as used in an insurance contract then under consideration. The court in construing the word "collapse" said at 205: "In Words & Phrases, 1st Series, volume 2, page 1248, it is said: 'Webster defined collapse thus: "To fall together suddenly, as the two sides of a hollow vessel; to close by falling or shrinking together; to shrink up, as a tube in a steam boiler collapses" . . . The Century Dictionary defines the word collapse thus: "To fall together or into an irregular mass of flattened form, through the loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling of its sides, or an inflated bladder from the escape of the air contained in it." ' "

In *Skelly,* the court went on to say at 204: "Certainly the parties when they entered into the contract

could not have had in mind in using the words 'collapse of the outer walls of the building' the knocking of a hole in the wall. In ordinary speech, what happened to the walls would not be termed their collapse and no one would have so described the happening." So too, in this case, the parties could not have had in mind when saying, "Loss . . . resulting from the collapse of floor(s), wall(s), or roof(s) . . ." that cracks in the walls and ceiling would be included. In ordinary speech such is not so termed.

To like effect, see, *Central Mutual Insurance Co. v. Royal*, 269 Ala. 372, 113 So. 2d 680 (1959); *Rubenstein v. Fireman's Fund Ins. Co.*, 339 Ill. App. 404, 90 N.E. 2d 289 (1950); *Nugent v. General Insurance Company of America*, 253 F. 2d 800 (1958).

Judgment affirmed.

Mr. Justice COHEN dissents.