**NORFOLK & DEDHAM MUTUAL FIRE INSURANCE COMPANY, Plaintiff,**

v.

**Roy and Wilma DeMARTA and Christian DeMarta, Defendants.**

**Civ. A. No. 91–6606.**

United States District Court, E.D. Pennsylvania.

Aug. 25, 1992.

Jennifer Gallagher, Philadelphia, Pa., for plaintiff.

Mark B. Sheppard, Duane, Morris & Heckscher, Philadelphia, Pa., for defendants.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff, Norfolk & Dedham Mutual Fire Insurance Company ("Norfolk & Dedham"), brought this suit seeking declaratory relief regarding defendants' claim for loss of property which collapsed and, in defendants' absence, was then demolished by the City of Philadelphia. Defendants counterclaimed, seeking damages of approximately $125,000.00 pursuant to the insurance policy at issue in this suit.

Now before the Court are the parties' cross-motions for summary judgment. Because we find that the unambiguous language of the policy covers the situation here and that the demolition constituted

mere recognition of a loss which already had occurred, we will grant defendants' motion.

Jurisdiction is based upon diversity of citizenship and the Declaratory Judgment Act, 28 U.S.C. § 2201.

*Factual Background*

Roy and Wilma DeMarta owned a two-story rowhouse located at 26 South Yewdall Street in Philadelphia. The DeMartas live in California.[1] There is no dispute that the DeMartas' homeowners "named peril" policy was in effect and the premiums were paid as of December 31, 1990, the time the dwelling was lost. The DeMartas received notice dated January 3, 1991 from the City of Philadelphia Department of Licenses and Inspections ("L & I") that the building was condemned and had been demolished. Although the DeMartas were then unable to determine the cause of loss, they wrote Norfolk & Dedham on January 9, 1991, informing the insurer of the loss and stating that their only knowledge of it was the notice from L & I. They also submitted a Property Loss Notice listing the cause of loss as unknown. Norfolk & Dedham instituted this action, contending that the claim was not compensable.

During discovery, the DeMartas produced the affidavit of Walter Weaver, the L & I building inspector who examined the dwelling before L & I demolished it. The affidavit is uncontested; indeed, both parties rely upon it in support of their motions. Weaver, who has been a housing inspector for fourteen of the twenty-three years he has worked at L & I and has inspected "thousands" of houses, stated, in pertinent part, that:

> it was evident ... that the building was in extremely dangerous condition. It had partially collapsed: namely that the rear portion of the south bearing wall of the structure had collapsed, leaving 12 second floor joists completely unsupported.... [T]here is no question the building would have completely collapsed

if not immediately demolished. The deteriorated condition was caused by long term exposure to elements of wind and rain leading to hidden decay and deterioration of the foundation and bearing wall. Upon closer inspection, it was evident that the rain conductors had been removed from the property, therefore, allowing rain to flow freely down the walls, contributing to the collapse. It was also evident that at some point someone had tried to repair the wall, in that there was relatively new mortar compared to the other parts of the structure along the south bearing wall. I cannot say with any certainty, however, whether or not this new construction or attempted renovation in any way contributed to the collapse of the building.

Affidavit of Walter Weaver, dated June 2, 1992, attached as Exhibit E to Plaintiff's Motion for Summary Judgment.

After Weaver, on behalf of L & I, recognized the partial collapse, which was about to result in an immediate total collapse, L & I employees unsuccessfully attempted to reach the DeMartas in California. Because it was a safety risk, the house was immediately demolished.

*Legal Analysis*

■ We now turn to the merits of the parties' motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). When there are no material underlying facts in dispute, summary judgment is appropriate to dispose of questions of insurance coverage. *McMillan v. State Mut. Life Assur. Co.*, 922 F.2d 1073, 1074 (3d Cir.1990). Under Pennsylvania choice of law principles, we apply the law of Pennsylvania, where the policy of insurance was

---

1. The third plaintiff in this lawsuit, the DeMartas' son Christian DeMarta, was incarcerated at Camp Hill at the time this suit was filed. Although defendants' briefs do not describe him as an owner, he is listed on the policy as a named insured. None of the people listed on the policy were in the vicinity at the time of the loss.

contracted and delivered, in construing the terms of the policy. *Id.* at 1074–1075.

The following provisions of the policy are pertinent:

> **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: ...
>
> b. hidden decay ...
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

.    .    .    .    .

### Section I—Exclusions

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. **1. Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy....

*See* policy at 5 and 7, attached as Exhibit A to Plaintiff's Motion for Summary Judgment.

▇ None of the other named perils in Section I—Perils Insured Against—were cited in the Weaver affidavit as possibly causing the collapse. The only possibility for the DeMartas to recover, therefore, lies in the provision covering collapse. Where the language of a contract is clear and unambiguous, Pennsylvania law requires us to give effect to such language. *Worldwide Underwriters Insurance Co. v. Brady*, 973 F.2d 192 (3d Cir.1992); *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

▇ Norfolk & Dedham makes three alternative arguments that it is not obligated to cover the loss. First, we consider plaintiff's argument that the "building inspector notes that at the time of demolition the involved premises was only in a state of *partial* collapse." Plaintiff's Memorandum of Law in Support of Summary Judgment at 4. The policy at issue, however, specifically states that it covers "collapse of a building or *any part of a building*" (emphasis added). According to Mr. Weaver's affidavit, this is exactly what occurred. He stated unequivocally that "[t]he rear portion of the south bearing wall of the structure had collapsed, leaving 12 second floor joists completely unsupported." *Affidavit* at page 2. His affidavit also confirms that L & I recognized that as a practical matter the building was considered to have completely collapsed. No other conclusion can be drawn from Mr. Weaver's statement that "there is no question the building would have completely collapsed if not immediately demolished." *Id.*[2]

We next turn to the cause of the collapse. Mr. Weaver's affidavit clearly states that "[t]he deteriorated condition was caused by long term exposure to elements of wind and rain leading to *hidden decay* and deterioration of the foundation and bearing wall." The definition of "decay" as it pertains to material things is: "Wasting or wearing away, disintegration; dilapidation, ruinous condition." IV *Oxford English Dictionary*, 322 (Clarendon Press, 2d Ed.1989).

The policy provides that a covered collapse can be "caused only by one or more" of the factors enumerated in its section covering "collapse". Here that factor must be "hidden decay," as no other enumerated factor applies to the facts of this case. Norfolk & Dedham relies on Mr. Weaver's statement that removal of the rain conductors allowed rain to run down the walls and contributed to the collapse to argue that the collapse was caused by more than the one factor of "hidden decay," and therefore, the collapse is not covered. We find this argument contrary

---

**2.** Norfolk & Dedham cites various cases dealing with the definition of the term "collapse". None of these cases, however, deal with an objectively identifiable collapse, such as what Mr. Weaver identified. Rather, these other cases address whether various settling and cracking problems constitute a collapse, not an issue here. (It is worth noting that Mr. Weaver is a professional inspector who has inspected thousands of houses. *Affidavit* at 1.)

to the plain meaning of Mr. Weaver's words. The fair inference is that the exposure to rain contributed to the overall condition of "hidden decay," which is unambiguously a covered cause of collapse under the policy.

Finally, Norfolk & Dedham contends that the loss was caused by L & I's action in demolishing the house, and relies upon its "Ordinance or Law" policy exclusion, recited above. This provision excludes a loss which is *caused by* the enforcement of law, *i.e.*, a loss directly caused by demolition "regardless of any other cause or event contributing concurrently or in any sequence to the loss."

We find that on the facts of this case, this exclusion should not apply because L & I's actions neither caused the loss nor contributed to it. Mr. Weaver's affidavit makes clear that the acts of L & I in demolishing the house merely constituted a recognition of the collapse that had already occurred because of the hidden decay. Norfolk & Dedham seeks to benefit from the fortuitous situation that the DeMartas were not in Philadelphia to take note of the collapse and report it before L & I saw it and demolished the house. We find that under the plain terms of the policy, the "Ordinance or Law" provision is inapplicable on the facts of this case.

*Conclusion*

Because we find that the loss of the house was caused by collapse due to hidden decay, which is clearly covered under the DeMartas' homeowners policy, we will grant defendants' motion for summary judgment and declare that their claim is covered.

Correspondingly, plaintiff's motion for summary judgment is denied.