Paul DOMINICK and Barbara Dominick,

v.

STATESMAN INSURANCE COMPANY, Appellant

Superior Court of Pennsylvania.

Argued Jan. 7, 1997.
Filed April 2, 1997.

Jeffrey D. Wright, Lancaster, for appellant.

Timothy P. Keating, Lemoyne, for appellees.

Before CAVANAUGH, JOHNSON and EAKIN, JJ.

JOHNSON, Judge.

In this appeal, we are asked to determine whether the rotting of floor joists in a residential home that resulted in the downward movement of the home's first floor and separation of that floor from the walls constitutes a "collapse" under the terms of a homeowners insurance policy and Pennsylvania law. Because we find that the damage to the home does not equal a collapse, we reverse.

In January of 1995, Paul and Barbara Dominick (the Dominicks) noticed that the first floor of their home had moved approximately one inch downward and that the floor had separated from the interior walls of their home. The Dominicks hired an architect to determine what had caused the first floor to shift in this way. The architect's inspection of the crawlspace under their home revealed that the main beams under the home were rotting. Thereafter, they contacted their homeowners insurance company, Statesman Insurance Company (Statesman), and filed a claim under their policy's collapse provisions.

Statesman then had its own structural engineer inspect the Dominicks' home. The engineer concluded that there was serious and extensive rot damage to the center girder and floor joists. He further determined that the damage was caused by long term exposure in the crawlspace to excessive moisture and high humidity. The engineer found that the conditions resulted from errors in the original design and construction of the Dominicks' home.

Statesman denied the Dominicks' claim because it found that the damage to their home did not constitute a collapse as defined in the Dominicks' homeowners policy. Statesman also concluded that coverage was excluded under the policy because the property damage was caused by, inter alia, deterioration, latent defect, wet rot, and settling.

In March 1995, the Dominicks filed a declaratory judgment action against Statesman. They then hired David Black, a structural engineer, to inspect their home and prepare a report. Subsequently, the Dominicks and Statesman filed cross-motions for summary judgment. Following argument before the trial court en banc, the trial court, with one judge dissenting, granted the Dominicks' motion for summary judgment and denied Statesman's motion for summary judgment. Statesman now appeals.

On appeal, Statesman presents one issue for our review: whether the rotting of the floor joists in the Dominicks' home, which resulted in the downward movement of the home's first floor and separation of that floor from the walls, constitutes a "collapse" under the Statesman homeowners insurance policy and Pennsylvania law.

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b) (since rescinded; *see* Pa.R.C.P. 1035.2); *Hoffman v. Brandywine Hosp.*, 443 Pa.Super. 245, 250, 661 A.2d 397, 399 (1995). In reviewing the grant of a motion for summary judgment, "[a] reviewing court must examine the record in the light most favorable to the non-moving party, accepting as true all well-pleaded facts and giving that party the benefit of all reasonable inferences drawn from those facts." *Hoffman, supra*, at 250, 661 A.2d at 399. "Whether a claim is within a[n insurance] policy's coverage or barred by an exclusion [in that policy] is a question of law that may be decided by a motion for summary judgment. We are not bound by the trial court's conclusions of law, but may draw our own inferences and reach our own conclusions." *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 11, 670 A.2d 646, 651 (1995) (citations omitted). We will not overturn a trial court's entry of summary judgment absent an error of law. *Id.*

The first step in construing an insurance contract is determining whether the terms of the policy are ambiguous or unambiguous. *Butterfield, supra*, at 13–14, 670 A.2d at 652. This Court stated that:

> "When interpreting an insurance contract, words that are clear and unambiguous must be given their ordinary meaning. Where ambiguities are found, they must be construed in the light most favorable to the insured. However, 'a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.' An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning.... Whether a policy provision is ambiguous is a question of law to be decided by the courts."

*Id.* (footnotes and citations omitted), quoting *Ryan Homes v. Home Indemnity*, 436 Pa.Super. 342, 346–47, 647 A.2d 939, 941 (1994).

■ The Pennsylvania Supreme Court has held that the term "collapse" as it is used in insurance contracts is not ambiguous. *Skelly v. Fidelity and Casualty Company of New York*, 313 Pa. 202, 205, 169 A. 78, 79 (1933); *Kattelman v. Nat'l Union Fire Insurance Co. of Pittsburgh*, 415 Pa. 61, 64, 202 A.2d 66,

67 (1964). In *Skelly*, the insured had a life-indemnity accident insurance policy that provided that the amount payable for death doubled if the insured's bodily injuries were caused by the "collapse of the outer walls of a building." *Skelly, supra*, at 203, 169 A. at 78. In that case, the insured was in an addition to a larger hotel when a railroad car "jumped the track alongside the hotel" and crashed into the addition. *Id.* The force of the crash tore a hole in the side of the addition and the insured was killed when, inter alia, portions of the wall that was carried through by the railroad car struck him. *Id.*

In *Skelly*, the insured's estate argued that the outer walls "collapsed" within the meaning of the policy. *Id.* The court, however, rejected the estate's contention and found that the term "collapse" was unambiguous. *Id.* at 204, 169 A. at 79. The court construed the term "collapse" in accordance with its plain ordinary meaning, it said:

> In Words & Phrases, 1st Series, volume 2, page 1248, it is said: "Webster defined collapse thus: "To fall together suddenly, as the two sides of a hollow vessel; to close by falling or shrinking together; to shrink up, as a tube in a steam boiler collapses'..
> .... The Century Dictionary defines the word collapse thus: "To fall together or into an irregular mass of flattened form, through the loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, or an inflated bladder from the escape of the air contained in it'......"

*Id.* Because the addition remained substantially intact after the railroad car tore through the walls, the *Skelly* court held that the accident did not involve a "collapse." *Id.*

In *Kattelman*, the plaintiffs sought recovery for damage to their property under their fire insurance policy's "collapse" provision. *Kattelman, supra*, at 63, 202 A.2d at 66. One of the concrete mats that supported the plaintiffs' home dropped from its position and twisted the foundation of the plaintiffs' home. *Id.* at 63, 202 A.2d at 67. This caused cracks in the wall of the plaintiffs' home, and caused the doors to jam. The "building itself broke

away from the party wall of the adjoining building. However, the building itself remained standing and intact; none of the floors, walls or roof fell in." *Id.* In *Kattelman,* the plaintiffs' insurance policy defined "collapse" as follows:

> Loss by collapse shall mean only physical injury to or destruction of the described property, resulting from the collapse of floor(s), wall(s), or roof(s) of the described building, but not collapse caused by or resulting from subsidence.

*Id.* at 63, 202 A.2d at 67. The court found that the term "collapse" as used in the plaintiffs' fire insurance policy was unambiguous and construed the term according to its plain and ordinary meaning. *Id.* at 64, 202 A.2d at 67. The *Kattelman* court found *Skelly* both analogous and controlling. *Id.* It therefore held that cracks in the wall and ceiling, and the breaking away of the building from the party wall of the adjoining building, did not constitute a collapse. *Id.*

In the instant case, the pertinent provision of the Statesman homeowners insurance policy reads as follows:

> 8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused by one or more of the following:
>
>   \*   \*   \*   \*   \*   \*
>
> b. Hidden decay;
>
>   \*   \*   \*   \*   \*   \*
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

Statesman homeowners insurance policy at 5 (1990), attached as Exhibit A to Plaintiffs' Complaint [hereinafter "Policy"]. In addition, the Policy states that no coverage is provided for loss:

> 1. Involving collapse, other than as provided in Additional coverage 8. [see above]
> 2. Caused by:
>
>   \*   \*   \*   \*   \*   \*
>
> e. Any of the following:
> (1) Wear and tear, marring, deterioration,

> (2) Inherent vice, latent defect, mechanical breakdown,
> (3) Smog, rust or other corrosion, mold, wet or dry rot;
>
>   \*   \*   \*   \*   \*   \*
>
> (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings.

Policy, *supra,* at 6–7.

We find that the term "collapse" as used in the Policy is unambiguous. *Butterfield, supra,* at 14, 670 A.2d at 652; *Kattelman, supra* and *Skelly, supra.* The term "collapse" in the Policy should have been construed in accordance with its plain and ordinary meaning. *Butterfield, supra; Kattelman, supra,* and *Skelly, supra.* In 1987, three years before the Policy was drafted, Webster's Ninth New Collegiate Dictionary defined "collapse" as follows:

> 1: to fall or shrink together abruptly and completely: fall into a jumbled or flattened mass through the force of external pressure ... 2: to break down completely: DISINTEGRATE ... 3: to cave or fall in or give way....

Webster's Ninth New Collegiate Dictionary 259 (1987). This definition does not vary from the definition of "collapse" as adopted by our supreme court in *Skelly* and *Kattelman.* Thus, both *Skelly* and *Kattelman* are controlling in the instant case.

The trial court opinion is in direct conflict with Pennsylvania law regarding the definition of the term "collapse." *Skelly, supra; Kattelman, supra.* Instead, the trial court erroneously relied on *Norfolk & Dedham Mut. Fire Ins. Co. v. DeMarta,* 799 F.Supp. 33 (E.D.Pa.1992). The trial court argued that it found *Norfolk* persuasive because that case reviewed identical insurance policy language. *Norfolk, supra,* at 35. *Norfolk,* however, was decided by a United States District Court and has not been adopted as the law of this Commonwealth; as such, it is not binding authority on this Court. *Rader v. Pennsylvania Turnpike Comm'n,* 407 Pa. 609, 617, 182 A.2d 199, 203 (1962); *see also Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 98, 596 A.2d 203, 210 (1991). Moreover, in

*Norfolk,* the insureds' property experienced a partial collapse because the south bearing wall of the structure had collapsed, leaving 12 second floor joists completely unsupported. *Norfolk, supra,* at 34, 35. Unlike the insureds' property in *Norfolk,* as discussed below, the Dominicks' home did not experience a partial collapse. Therefore, the trial court's reliance on *Norfolk* is misplaced.

◼ Because the first floor in the Dominicks' home has no predictable structural value and required temporary support to prevent further damage until the required permanent structural repairs could be done, the trial court concluded that this constituted a collapse within the terms of the Policy. The trial court found, and the Dominicks claim, that interpreting the term "collapse" under the standard announced by our supreme court would penalize the Dominicks for discovering the hidden decay. We disagree. Our supreme court has determined that the better public policy is to require a structure to fall together or fall in to constitute a collapse. *Skelly, supra; Kattelman, supra.* Because this Court's formal purpose is to maintain and effectuate the decisional law of our supreme court as faithfully as possible, we are not authorized to create or adopt a new standard. *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985). While it is unfortunate that the Dominicks have suffered a loss as a result of the rot and decay of their floor joists, we cannot act out of sympathy. They have not suffered a "collapse" as that term is defined under Pennsylvania law, thus they are excluded from coverage under the Policy. *Skelly, supra; Kattelman, supra.*

In the instant case, the Dominicks' first floor moved downward and separated from the interior walls of their home. While the wood beam used to support the center portion of the house has lost its mechanical and structural properties due to the extent of the rot decay, neither full nor partial collapse of the Dominicks' home has occurred. Like the building in *Kattelman,* the Dominicks' home has remained standing and intact; neither the walls, floors, or roof have fallen in. In fact, the Dominicks continue to reside in their home and have access to every room. Thus, we find that, under the instant facts, the Dominicks have not experienced a "collapse" as that term is construed both under Pennsylvania law and in accordance with its plain and ordinary meaning. *Skelly, supra; Kattelman, supra.* We also conclude that to hold otherwise results in a tortured construction of the Policy and exceeds the intention of the parties as expressed in that policy. *Kattelman, supra.*

Based on the foregoing analysis, we conclude that the Dominicks' claim was not within the Policy's coverage because the Dominicks' home did not collapse or suffer a partial collapse. Thus, there was no genuine issue of material fact and Statesman was entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Hoffman, supra.*

Because we find that the trial court committed an error of law in granting the Dominicks' motion for summary judgment and denying Statesman's cross-motion for summary judgment, we reverse the trial court's order to that effect and remand the matter to the trial court with instructions to enter judgment in favor of Statesman.

Order **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**