**Northside Bank v. American
Casualty Co. of Reading**

C.P. of Allegheny County, no. GD 97-19482.

*Richard J. Thomas* and *Jeffrey T. Morris,* for plaintiff.

*Kevin Kavanagh,* for defendant.

BAER, *J.,* January 10, 2001—Plaintiff Northside Bank sued defendant American Casualty Company of Reading, PA (CNA) contending that CNA breached a "Community financial institution bond" (insurance policy) that insured Bank against, inter alia, losses from fraudulent electronic fund transfers and from computer crimes.[1] CNA moved for summary judgment. Bank filed

---

1. The named defendant, American Casualty Company of Reading, PA, is evidently a CNA company. All involved in this case have referred to the defendant as "CNA," and we will do likewise.

a response in which it argued that there was a genuine issue of material fact concerning interpretation of the words "modified or altered" within the insurance policy, and that therefore CNA's motion for summary judgment should be denied. In the alternative, Bank filed its own motion for summary judgment and requested that we grant it summary judgment. We concluded that there was no genuine issue of material fact, and that CNA was entitled to summary judgment as a matter of law. Bank has appealed, and we file this opinion in accordance with the mandate of Pa.R.A.P 1925(a).

We are mindful that in considering a motion for summary judgment, we must view the facts in a light most favorable to the non-prevailing party. *Hamilton Bank v. Insurance Co. of North America,* 384 Pa. Super. 11, 557 A.2d 747 (1989). With that standard fully in mind, the facts are as follows. On October 12, 1994, Bank opened an account incident to a merchant services agreement with a company known as Dakco PC Product Division Inc. Dakco then proceeded to accept orders for merchandise, and take payment by debit and credit cards. Dakco electronically transmitted the debit and credit card authorizations to Bank, and, upon receipt, Bank transferred money into Dakco's account. Eventually, it was disovered that Dakco never delivered the purchased merchandise to its customers, and they exercised their rights under federal law to rescind their obligation to pay for the unshipped merchandise. See, 15 U.S.C. §1666; *FTC v. Overseas Unlimited Agency Inc.,* 873 F.2d 1233 (9th Cir. 1989). When these customers refused to pay, their creditors, in turn, refused to pay, or charged back the amounts paid to Bank. When

Bank went to charge back Dakco, it found Dakco's accounts depleted. Bank sustained a loss of about $300,000.

Bank hopes to recoup these funds through insurance proceeds claiming coverage under section 13 of endorsement G-21032A and section 14 of endorsement G-21033A to the insurance policy.

Sections 13 and 14 provide as follows:

"(13) Electronic Funds Transfers

"Loss resulting directly from the insured having in good faith and in the usual course of business transferred, paid or delivered any funds or property, or established any credit or given any value on the faith of, or assumed any liability or otherwise acted upon, any *fraudulent electronic instruction or advice* transmitted to the insured through an electronic funds transfer system.

"(14) Computer Crime

"(A) Computer systems fraud

"Loss resulting from the insured having in good faith and in the usual course of business transferred, paid or delivered any funds or property, established any credit, debited any account or given any value or assumed any liability as the direct result of any *fraudulent electronic instruction or advice* transmitted to or from the insured through

"(1) the insured's computer system;

"(2) any shared network or facility for any automated teller machine or point-of-sale terminal in which the insured participates; or

"(3) a corporate customer cash management system." (emphasis added)

The term "fraudulent electronic instruction or advice" is defined for purposes of both sections 13 and 14 as follows:

"(a) an electronic instruction or advice purporting to have been sent by another financial institution or automated clearing house or by a customer of the insured, and which instruction or advice is intended to deceive and is not in fact sent by said financial institution or automated clearing house or by said customer; or

"(b) an electronic instruction or advice which is modified or altered with intent to deceive after being sent by another financial institution or automated clearing house or by a customer of the insured."

We accept for purposes of summary judgment, that Bank in good faith and in the usual course of business paid monies to Dakco upon receipt of electronic instructions transmitted through an electronic fund transfer system, and sustained losses.[2] Thus, if any legally successful argument could be made that the transfers were of fraudulent electronic instructions, we would not have entered summary judgment.

As set forth above, the definition of a fraudulent electronic instruction has two subparts. Bank concedes that subpart (a) dealing with a case where someone other than a customer poses as the customer to defraud a bank is not applicable herein. Instead, Bank relies on subsection (b) which defines a fraudulent electronic instruc-

---

2. For sake of simplicity, we will refer to "electronic instructions or advice" collectively as "electronic instructions."

tion as one which is *modified or altered after being sent by a customer with intent to deceive.*

Bank argues that the words "modified or altered" are ambiguous, and, therefore, CNA's motion for summary judgment should be denied. CNA argues that the policy is clear and unambiguous, and that, therefore, we should grant its motion. It is well settled that the issues of whether contractual language is ambiguous, and if not, whether a claim falls within a policy's coverage are questions of law which may be decided by a court deciding a motion for summary judgment. *Dominick v. Statesman Insurance Co.,* 692 A.2d 188 (Pa. Super. 1997). Our Supreme Court has summarized the applicable principles in *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999):

"The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. . . .

"Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' . . . This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a

particular set of facts. . . . We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." (citations omitted)

In an understandable attempt to avoid a $300,000 loss, Bank seeks to place a square peg in a round hole. It argues that Dakco's submission to Bank of the electronic instructions and subsequent failure to ship the merchandise should be viewed as a modification or alteration of the electronic instruction with the intent to deceive. This construction is so strained and at odds with the obvious intent of the insurance policy that to accept it would be to distort the meaning of the policy beyond all recognition. The simple truth is that the words "modified" and "altered" mean exactly what they say, and the electronic instructions submitted to Bank in this case were never modified or altered. These instructions directed that Bank pay a sum certain to Dakco when they left Dakco's control, and were unmodified and unaltered when they reached Bank; Bank read them, and, in fact, paid them in accordance with their unmodified and unaltered language. As counsel for CNA points out, it is the fact that Dakco never "altered or modified" the instructions by canceling them or directing that they not be paid that forms the heart of Bank's complaint.

A review of the insurance policy in toto, and the electronic fund transfer and computer crimes coverage in particular, establishes that the purpose of the coverage was to protect the Bank from someone breaking into the electronic fund transfer system and pretending to be an authorized representative or altering the electronic instructions to divert monies from the rightful recipi-

ent. That is simply not what happened in this case. Dakco was a customer of Bank. It submitted an electronic instruction which was never modified or altered, and, in fact, was honored. While Bank certainly has an action against Dakco, it cannot succeed in this case against CNA on the theory that the electronic instructions were somehow modified or altered after being sent by Dakco, when they simply were not.