401 FOURTH STREET, INC., Appellant

v.

INVESTORS INSURANCE GROUP, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 1, 2002.

Filed April 22, 2003.

---

Derek Braslow, Pennsauken, N.J., for appellant.

Andrew M. Schwartz, Philadelphia, for appellee.

Before: DEL SOLE, P.J., ORIE MELVIN and BECK, JJ.

DEL SOLE, P.J.

¶ 1 401 Fourth Street, Inc. appeals from the grant of summary judgment in favor of Investors Insurance Group. We reverse.

¶ 2 The facts of this case are not in dispute. Appellant is the owner of a building in Montgomery County which is insured by means of a policy issued by Appellee. Appellant paid an additional premium to include an endorsement providing coverage for collapse. Specifically, the policy provided:

> D. ADDITIONAL COVERAGE—COLLAPSE
>
> We will pay for loss or damage caused by or resulting from **risks of direct physical loss involving collapse** of a building or any part of a building caused only by one or more of the following:
>
> . . .
>
> 2. Hidden decay;
>
> . . .
>
> Collapse does not include settling, cracking, shrinkage, bulging or expansion.

Amended Complaint, Exhibit A (emphasis added). With the exception of the last statement defining what collapse is not, the term collapse is not otherwise defined in the policy.

¶ 3 During the policy's coverage period, a parapet wall in Appellant's building began to bow and lean inward. Appellant made a claim for coverage and both Appellant and Appellee hired engineers to inspect the building. Both experts concluded that the wall was in danger of completely collapsing and needed immediate repairs. Appellee refused to provide coverage on the ground that the wall had not actually fallen to the ground. Appellant then filed this breach of contract claim. After discovery was completed, both parties filed motions for summary judgment. The court below denied Appellant's motion and granted Appellee's motion, dismissing the complaint with prejudice.

¶ 4 Appellant sets forth two issues in its Statement of Questions:

1. Whether the trial court erred in finding that 401 did not suffer "risks of direct physical loss involving collapse"?

2. Whether the trial court erred in finding the language ". . .risks of direct physical loss involving collapse. . ." unambiguous, requiring an actual collapse?

Appellant's Brief at 4.

¶ 5 Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Peffer v. Penn 21 Assoc.*, 406 Pa.Super. 460, 594 A.2d 711 (1991). This Court may reverse the grant of summary judgment if there has been an error of law or a clear abuse of discretion. *Id.* The interpretation of a contract is a question of law over which this court need not defer to the finding of the trial court. *United Services Auto.*

*Asso. v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982 (1986).

¶ 6 Presently, the trial court, in determining that the policy did not apply unless the building or a part of it actually fell to the ground, relied on *Dominick v. Statesman Ins. Co.,* 692 A.2d 188 (Pa.Super.1997), and the two Supreme Court cases cited therein.[1] In *Dominick,* the homeowners' policy covered "direct physical loss to covered property involving collapse of a building or any part of a building...." *Id.* at 191. When the first floor of the home moved approximately one inch downward and the floor separated from the interior walls, the homeowners filed a claim under the policy which the insurer denied. A panel of this Court determined that the homeowners' claim was not within the policy's coverage because the home did not collapse.

¶ 7 *Dominick,* however, did not involve the same language as the policy in question in the present case. Here, the policy does not insure only against "collapse" but also against "**risks** of direct physical loss **involving** collapse." This additional language distinguishes the present case from *Dominick* and the Supreme Court cases on which it relies and compels a different result. The use of the terms "risks" and "involving" clearly broaden the policy's coverage to include something less than a structure completely falling to the ground.

¶ 8 We do not share the trial court's concern that this interpretation would unfairly subject the insurer to liability based on "potentially infinitesimal risks" or "the existence of some small or vague possibility" of collapse. First, the situation presented in this case is not one of an infinitesimal risk or vague possibility of collapse; both experts agreed that if repairs were not undertaken immediately, the parapet wall would completely collapse. Second, it is not the trial court's responsibility to rewrite the policy to protect the insurer. If Appellee wanted to limit its risk to actual and complete collapse to the ground, it could easily have done so.

¶ 9 We conclude, therefore, that the trial court committed an error of law in granting Appellee's motion for summary judgment. Accordingly, we reverse the grant of summary judgment and remand for further proceedings. Jurisdiction relinquished.

¶ 10 ORIE MELVIN, J. files a dissenting opinion.

## DISSENTING OPINION BY ORIE MELVIN, J.

¶ 1 The majority distinguishes *Dominick v. Statesman Ins. Co.,* 692 A.2d 188 (Pa.Super.1997) and finds that the policy here insures not only against "collapse," but also against "risks of direct physical loss involving collapse." Yet, the majority also recognizes that the more specific language in the contract clearly defines collapse as not including "settling, cracking, shrinkage, **bulging** or expansion." Amended Complaint, Exhibit A (emphasis added). As the parapet wall in question has not collapsed and the "risk of direct physical loss involving collapse" is defined

---

1. In *Skelly v. Fidelity & Casualty Co.,* 313 Pa. 202, 169 A. 78 (1933), the insured was in a hotel when a railroad car jumped the track and crashed into the hotel. The insured was killed when portions of the outside wall that was carried through by the railroad car struck him. In *Kattelman v. National Union Fire Ins. Co.,* 415 Pa. 61, 202 A.2d 66 (1964), one of the concrete mats that supported the policyholders' home dropped from its position and twisted the foundation of the policyholders' home, causing the building to break away from the party wall of the adjoining building. In both of these cases, the Supreme Court held that a policy which insured against "collapse" did not cover either of these events.

as not including bulging, I must respectfully dissent.

¶ 2 I begin by recognizing that it is undisputed that the parapet wall in Appellant's building is beginning to bow and lean inward. However, despite the majority's statement to the contrary both experts do not agree that immediate repair is necessary, and neither expert testified that collapse is imminent. Accordingly, I believe the trial court correctly denied Appellant's motion and granted Appellee's motion dismissing the complaint with prejudice.

¶ 3 I find the trial court correctly relied on *Dominick v. Statesman Ins. Co.*, 692 A.2d 188 (Pa.Super.1997). The homeowners' policy in *Dominick* covered "direct physical loss to covered property involving collapse of a building or any part of a building...." *Id.* at 191. The majority concedes that this Court determined that the homeowners' claim was not within the policy's coverage because the home did not collapse, and there is no direct physical loss involving collapse until there is an actual collapse. Presently, the only difference in the policy language is the addition of the term "risk." The policy here reads "**risks** of direct physical loss **involving** collapse." All insurance is meant to cover risks. I do not believe that the addition of the term "risks" to the language of this policy broadens the coverage.

¶ 4 Finally, the trial court's concern that this interpretation would unfairly subject the insurer to liability based on "potentially infinitesimal risks" or "the existence of some small or vague possibility" of collapse should not be so summarily dismissed. Surely the majority's holding will open a flood gate for claims seeking recovery for every bulging, bowed and leaning wall out there regardless of how imminent the danger it presents.

¶ 5 Because the facts of this case are not in dispute and the use of the term "risks" is superfluous language and does not broaden the policy's coverage, I would affirm.