549 A.2d 1311

**Thomas B. McCAIN and Judith K. McCain, Appellants,**

v.

**PENNBANK, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 16, 1988.

Filed Oct. 31, 1988.

314

Wayne H. Hundertmark, Erie, for appellants.

Kemp C. Scales, Titusville, for appellee.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

CAVANAUGH, Judge:

The issue in this case is whether the court below erred in granting a motion for summary judgment in favor of the defendant, Pennbank, the appellee herein. The plaintiffs below are the appellants in this court.

The basic facts are not in dispute. In March, 1986, Thomas B. McCain, one of the appellants, applied to Pennbank for refinancing on his home mortgage. The original mortgage had been granted by Pennbank. Mr. McCain completed an application form and was told by the branch manager that he foresaw no problem in obtaining refinancing in the amount of $21,000.00. Copies of the appellants' income tax returns did not accompany the application for refinancing and the tax returns were forwarded to the bank at a later date. The application was sent to the main office of Pennbank in Erie, Pennsylvania, which determined that

the McCains did not have the necessary income to qualify for refinancing on the secondary mortgage market.[1] The bank was willing to make an exception and to refinance the mortgage if Mr. McCain had a deposit account with the bank. At one time, Mr. McCain, who was in the auto body and glass business, kept his business accounts with Pennbank, but he transferred the account to the Exchange Bank in Franklin, Pennsylvania, in February, 1984 after he had a dispute with one of Pennbank's employees.

On May 2, 1986, Mr. Stoops advised Mr. McCain that the bank would not refinance his mortgage because he did not have a business account at the bank and his income was insufficient.[2] He asked Mr. McCain to transfer his business account back to Pennbank, but he refused. On May 12, 1986, Pennbank wrote to Mr. and Mrs. McCain and advised them "that your recent credit application cannot be granted at this time and has been declined."

Subsequently, Pennbank extended a line of credit to the appellants who have made use of the credit line.

█ In January, 1987, the appellants commenced a civil action against Pennbank setting forth two counts. Count I alleged defamation by the bank "by publishing in a written report or circular, the knowingly false and defamatory

---

1. Jack Stoops the manager of the Pleasantville office where the application was submitted, testified that in order to qualify for the secondary mortgage market, the debt to income ratio cannot exceed 36% of average monthly income. The application initially given to the manager by Mr. McCain apparently presented a different income picture than that reflected on the federal income tax returns.

2. Mr. McCain testified concerning this on deposition as follows:
Q. What happened on May 2nd?
A. At five to five, and I remember I was making out payroll, Jack called me and he told me he wasn't refinancing the home and I said "why" and he said "because you do not have your business account here".
Q. That's what he told you was the reason?
A. Yes, sir.
Q. Did he give you any other reason?
A. I said "you can't do that to me. I have my right to refinance it" and he said "how do you like this; you don't make enough money" and then I told him "I'll see you Monday morning before the bank is open. I'll be waiting for you at the door".

matter that plaintiffs had insufficient money and a poor credit rating with defendant bank." [3] Count II alleged *inter alia* that the defendant:

had attempted to extort or otherwise blackmail additional business transactions with Plaintiffs by requiring Plaintiffs to bring their business accounts into said Defendant Bank for the purpose of obtaining money thereby.

15. By said attempts of extortion or blackmail, Defendant Bank has caused injury to Plaintiffs' good name, reputation and credit by reporting a poor credit rating, financial difficulty or financial untrustworthiness on the part of the Plaintiffs.

On March 16, 1987 defendant filed requests for admissions and answers were not timely filed thereto by the plaintiffs as required by the Rules of Civil Procedure.[4] Defendant filed a motion for summary judgment based on the pleadings, depositions and admissions. The plaintiffs filed a "Motion for Leave to Amend Admissions Deemed Admitted Due to Untimely Response to Request Therefor." The court below granted the plaintiffs' motion and reserved judgment on the defendant's motion for summary judgment until answers were filed. Subsequently, the court, by Pfadt, P.J., specially presiding, granted the defendant's motion for summary judgment and the plaintiffs have appealed to this court from the entry of such judgment.

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on

3. In paragraph 12 of the complaint, the appellants claim that Pennbank's actions caused them injury to "their *good nature*, reputation and credit ..." There is no cognizable claim in law for injury to one's "good nature" and we will assume that the plaintiffs were referring to their good name.

4. Pa.R.C.P. 4014(b) provides in part:
 (b) Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a verified answer or an objection addressed to the matter, signed by the party or by his attorney.

file, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Williams v. Pilgrim Life Insurance Co.*, 306 Pa.Super. 170, 452 A.2d 269 (1982); *Gabovitz v. State Auto Insurance Association*, 362 Pa.Super. 17, 523 A.2d 403 (1987); *Hedlund Manufacturing Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357 (1988); Pa. R.C.P. 1035(b). Summary judgment may be entered only in cases that are clear and free from doubt. *Dunn v. Teti*, 280 Pa.Super. 399, 421 A.2d 782 (1980); *Tom Morello Construction Co. v. Bridgeport Federal Savings & Loan Association*, 280 Pa.Super. 329, 421 A.2d 747 (1980); *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 456 A.2d 1009 (1983). In addition, we must examine the record in the light most favorable to the non-moving party and accept as true all well pleaded facts in the non-moving party's pleadings and give the non-mover the benefit of all reasonable inferences to be drawn therefrom. *Ferguson v. King*, 362 Pa.Super. 543, 524 A.2d 1372 (1987); *Metal Bank of America v. Insurance Company of North America*, 360 Pa.Super 350, 520 A.2d 493 (1987). Applying all of these tests, we find that the defendant bank is entitled to summary judgment.

 A trial court's grant of summary judgment will be overturned only if there has been an error of law or clear abuse of discretion. *Jones v. Keystone Insurance Co.*, 364 Pa.Super. 318, 528 A.2d 177 (1987). We discern neither an error of law nor abuse of discretion and accordingly we affirm the summary judgment entered by the court below. The two counts of the complaint sound in defamation although Count II refers to "extortion" and "blackmail". Neither the pleadings nor the depositions develop anything that would tie the facts alleged into either extortion or blackmail and in fact the defendant concentrates only on the aspect of defamation.[5] Bold unsupported assertions of

5. Blackmail and extortion are crimes and are included within the crime of theft. 18 Pa.C.S. § 3902. We noted in *Commonwealth v. Shaffer*, 279 Pa.Super. 18, 24–25, 420 A.2d 722, 725–26 (1980) that: " 'This crime of "theft" was intended to embrace the offenses heretofore known as larceny, embezzlement, false pretenses, *extortion,*

conclusory accusations cannot create genuine issues of material fact. *Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109 (1985) set forth the requirements to establish defamation which include proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient that it was intended to be applied to the plaintiff; and (6) special harm resulting to the plaintiff from its publication. *See also* 42 Pa.C.S. § 8343(a). *Chicarella* further noted that the publication of defamatory matter is the intentional or negligent communication of such matter to a third person.

In the case before us, the pleadings, affidavit and depositions do not indicate the presence of a defamatory statement, let alone the publication or communication of such a statement to a third person. A communication is defamatory if it tends to harm the reputation of another so as to lower that person in the estimation of the community or deter third persons from dealing with him. *Dobson v. WBRE–TV*, 347 Pa.Super. 612, 500 A.2d 1226 (1985). All that has been presented was a request for refinancing of a residential mortgage and the bank's denial of the refinancing to the plaintiffs unless the applicants would transfer a

*blackmail*, fraudulent conversion, receiving stolen property and the like …' " See also *Commonwealth v. Robichow*, 348 Pa.Super. 338, 487 A.2d 1000 (1985). Theft by extortion is defined at 18 Pa.C.S. § 3923 as follows:

§ 3923. Theft by Extortion

(a) Offense Defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to:

(1) commit another criminal offense;

(2) accuse anyone of a criminal offense;

(3) expose any secret tending to subject any person to hatred, contempt or ridicule;

(4) take or withhold action as an official, or cause an official to take or withhold action;

(5) bring about or continue a strike, boycott or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act;

(6) testify or provide information or withhold testimony or information with respect to the legal claim or defense of another; or

(7) inflict any other harm which would not benefit the actor.

business account to the bank which might have constituted the basis for an exception. The only writing by the bank was a letter of May 12, 1986 which told the plaintiffs that their application for refinancing had been denied, and all agree that this in fact occurred.

The appellants had no indication that their credit had been adversely affected in any way. Mr. McCain testified concerning the effect of the denial of his refinancing as follows:

Q. Is there any reason you didn't go to another bank to refinance?

A. *If figured it ruined my credit.* How can I get credit somewhere else when I was turned down here?

Q. Well, you mentioned in the complaint that Pennbank made a bad report on your credit. *Do you have a copy of any report they made on your credit?*

A. *No, but it's understandable if I went to apply for a loan somewhere else, you have to state that you were turned down at a previous bank and that's understandable that you would have to say that.*

Q. Is there any reason you didn't go to Exchange Bank where you keep your business account and apply there?

A. Not after I got turned down here. I would have to say I was turned down here. *I figured it wouldn't do me any good to try to refinance there.*

Q. Did anyone at Pennbank tell you your credit was no good?

A. *I took it for granted* that I couldn't do it—I didn't have enough money. Lenny offered me a fifteen year mortgage.

(Emphasis added)

Judith McCain testified with respect to possible defamation as follows:

Q. Did you see the notice [of denial of refinancing] when it came in the mail?

A. Yes I did.

Q. But you had no further conversations with the bankers, is that right?

A. No.

Q. What evidence do you have or have you seen that indicates that this bank has given you and your husband a bad credit rating?

A. *We have received nothing, but our credit has been damaged.*

Q. *That's your assumption.*

A. *Yes.*

Q. *Nothing happened other than the turning down of the loan that would suggest that, is that right?*

A. *Right.*

Q. To your knowledge your husband was never told that the loan was turned down because of your credit standing, your record of handling credit in the past?

A. No.

(Emphasis added.)

The appellants are not aware of anything defamatory that was uttered against them by the bank. They have not been refused credit at any other financial institution because the bank refused to refinance their mortgage. The appellants allege in their brief at page 9 that "defendant bank gave the plaintiffs a $10,000.00 line of credit without bringing their business accounts back into the bank." [6]

6. Appellants argue "If Plaintiffs did not have enough money for the refinancing of $21,000.00, the question must be asked as to why defendant believed plaintiffs had enough money for a $10,000 line of credit?" (Appellant's brief, page 11) It must be noted initially that although appellants contend in numerous parts of their brief that the bank officer told them they could not obtain refinancing because they did not have enough money, Mr. McCain himself testified that he was told refinancing was not approved because "he did not make enough money." This statement refers not to lack of assets but to inadequate income. Secondly, the fact that appellants obtained a ten thousand dollar line of credit has no bearing on their inability to obtain refinancing of a $21,000.00 home mortgage. Different factors are involved, from a banking standpoint, in extending a line of credit where the interest charges may be quite high and the repayment schedule much shorter, than in refinancing a mortgage.

Pennbank was not required to grant the appellants the refinancing they requested. A bank has an absolute right to refuse an application for a mortgage loan and need give no reason for its refusal. *Todd v. Skelly*, 384 Pa. 423, 120 A.2d 906 (1956); *Buczek v. First National Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122 (1987). Thomas McCain told the bank manager that he had a right to refinance the mortgage on his home and, in effect, demanded that the bank give him the mortgage that he requested. There is no basis in law for this position. In this case, there is no genuine issue as to any material fact and based on the record set forth in the pleadings and depositions, Pennbank is entitled to summary judgment. All the complaint alleges factually is that the appellants sought to refinance the mortgage on their home and that the bank would not grant refinancing unless Mr. McCain opened a business account with the bank, which he previously had maintained. He refused to do so and the bank would not grant the mortgage the appellants wanted and wrote to the appellants telling them, as they already knew, that their application had been denied. The bank also gave Mr. McCain an additional reason that his income was inadequate. In an action for defamation, it is the function of the trial court to make a threshold determination of whether the challenged publication is capable of a defamatory meaning, and if it is not, there is no reason for the matter to proceed to trial. *Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168, (1988). In the instant case we do not have a challenged publication to a third person and there is nothing to present to the jury. Although the appellants alleged that Pennbank published a written report "that Plaintiffs had insufficient money and a poor credit rating with defendant bank", they acknowledged that they have never seen nor heard of such a report, but merely assume that it exists. Plaintiffs' case, at best, is based on speculation and assumptions. It is not this court's function to decide if issues of fact exist, but only to determine if there is an issue of fact to be tried. *Thorsen v.*

*Iron and Glass Bank,* 328 Pa.Super. 135, 476 A.2d 928 (1984). We find that no such issue exists.

JUDGMENT AFFIRMED.