661 A.2d 397

Helen HOFFMAN, Executrix of the Estate of Helen M. Perpinka and Theodore J. Perpinka, Appellants,

v.

BRANDYWINE HOSPITAL, Gordon R. Eck, D.O., Sanda Rajan, M.D., American Red Cross, American Red Cross Penn–Jersey Region and William C. Sherwood (2 cases).

Superior Court of Pennsylvania.

Argued March 28, 1995.

Filed June 29, 1995.

246

Gary R. Block, West Chester, for appellant.

Charles T. Roessing, Philadelphia, for Eck, appellee.

Dolores A. Figueroa, Fort Washington, for Rajan, appellee.

Before BECK, TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This is a consolidated appeal from two orders of court granting appellees Gordon Eck, D.O. and Sanda Rajan, M.D. summary judgment in a medical malpractice action. We

affirm in part, reverse in part, and remand for further proceedings.

On December 3, 1984, decedent Helen M. Perpinka was admitted to Brandywine Hospital with a mass in her left breast. Dr. Sanda Rajan, decedent's surgeon, performed a left radical mastectomy on December 17, 1984. During the course of pre-operative, operative, and post-operative procedures, Dr. Rajan ordered several blood transfusions. In October of 1986, the American Red Cross notified Dr. Eck, the decedent's family physician, that a unit of blood transfused to the decedent had been donated by an individual who subsequently tested positive for the presence of HIV antibodies. Tragically, the decedent contracted the HIV virus from the contaminated blood. Before ultimately succumbing to AIDS related complications, decedent suffered chest congestion, drastic weight loss, viral infections, and fatigue.

Appellant Helen Hoffman filed this medical negligence suit on behalf of her deceased mother, Helen Perpinka. The original named defendants were Brandywine Hospital, American Red Cross, American Red Cross Penn–Jersey Region, William C. Sherwood, Dr. Gordon R. Eck, D.O., and Dr. Sanda Rajan, M.D. Appellant reached a settlement with American Red Cross, American Red Cross Penn–Jersey Region and William Sherwood, providing them with a joint tortfeasor release. Brandywine Hospital was dismissed from the action without objection from appellant. Appellant proceeded against Dr. Rajan and Dr. Eck.

In her complaint, appellant accused Dr. Rajan of ordering unnecessary blood transfusions and failing to obtain the patient's informed consent to those transfusions. Appellant further claimed that Dr. Eck, decedent's family physician, negligently cared for Mrs. Perpinka after she was diagnosed as HIV positive. Appellees, Dr. Rajan and Dr. Eck, successfully moved for summary judgment. In response, appellant filed the instant timely appeal arguing that because she had stated a valid cause of action against both appellees for negligence and against appellee Dr. Rajan for lack of informed consent, summary judgment was improper.

 Summary judgment may be properly granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035, 42 Pa.C.S.A. The judgment may only be granted in cases that are clear and free from doubt. *Szabo v. Bryn Mawr Hospital,* 432 Pa.Super. 409, 412, 638 A.2d 1004, 1006 (1994). A reviewing court must examine the record in the light most favorable to the non-moving party, accepting as true all well-pleaded facts and giving that party the benefit of all reasonable inferences drawn from those facts. *Id.* We may overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988). *Accord Marks v. Tasman,* 527 Pa. 132, 134–35, 589 A.2d 205, 206 (1991).

 To state a *prima facie* cause of action for malpractice, a plaintiff must establish that (1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990). Moreover, a plaintiff must "present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Id.* at 62, 584 A.2d at 892.

 Appellant has maintained throughout this action that Dr. Rajan breached the duty of care owed by a physician to a patient by ordering unnecessary blood transfusions. To that end, appellant relies on an expert in the field, Thomas H. Gouge, M.D. Dr. Gouge opined:

At issue is the blood transfusion which was the clear cause of Ms. Perpinka's AIDS and death. Although it is clear in

1991 that one would not give a blood transfusion to such a patient unless she was symptomatic from anemia, this was much less clear in 1984.

A general guideline at that time was that no single unit transfusion would be given and transfusion should not be given unless the hematocrit was below 30%, *except to replace blood lost at operation.*

Ms. Perpinka was not symptomatic from anemia. Her hematocrit was in an acceptable range for surgery. No significant blood [loss] occurred at surgery. No rationale for transfusion is documented in the chart.

Given the patient's nutritional deficiency and mild anemia with low iron scores, attention to her red cell mass and serum iron was appropriate and the four units of blood transfused only kept her hematocrit in the same range but transfusion was not the only method of dealing with nutritional anemia. Transfusion is hazardous, as the outcome shows, and should only be used when necessary. Accordingly, I believe the four unit transfusion over December 15–17, 1984 departs from the appropriate standards of medical care. The transfusion as a cause of AIDS speaks for itself.

R. at 72a (emphasis added).

Although Dr. Gouge acknowledged the propriety of transfusions to replace blood lost during an operation, he did not conclude that the December 17, 1994 transfusion was appropriate. To the contrary, he opined that the amount of blood lost during decedent's surgery was insufficient to justify replacement through transfusion. We are therefore confronted with expert testimony that Dr. Rajan's conduct in ordering unnecessary blood transfusions deviated from accepted medical practice and that a transfusion of tainted blood caused the specified harm.[1] Because this matter is before us on appeal

---

1. Expert testimony need not be expressed in precisely the language used to enunciate the legal standard. *See In re Jones,* 432 Pa. 44, 246 A.2d 356 (1968) (medical testimony need not conform to precise statutory definitions). *See also McCann v. Amy Joy Donut Shops,* 325 Pa.Super. 340, 343–44, 472 A.2d 1149, 1151 (1984) (*en banc*) (a reviewing court will consider expert testimony in its entirety to determine whether the opinion has been expressed with a reasonable degree

from a grant of summary judgment, we need not assess the ultimate merits of the proffered testimony. Rather, we conclude only that the lower court erred in entering summary judgment on this issue because it is the function of the trier of fact to resolve genuine issues of material fact. Accordingly, we reverse the lower court's order with respect to this claim and remand for further proceedings.

■ Appellant next argues that by granting summary judgment, the lower court improperly disposed of the lack of informed consent claim. Specifically, appellant maintains that Dr. Rajan improperly failed to obtain the decedent's informed consent before administering blood transfusions. Our court has recently authored a comprehensive discussion of the doctrine of informed consent:

> The underlying premise of this doctrine is that a physician is precluded from administering to or operating upon a mentally competent adult patient in non-emergency situations without his consent. "Every human being of adult years and sound mind has a right to determine what shall be done with his own body." In order for the consent to be valid, the physician is duty bound to apprise the patient "of such important matters as the nature of the therapy, the seriousness of the situation, the disease and the organs involved and the potential results of the treatment."

*Stover v. Association of Thoracic & Cardiovascular Surgeons,* 431 Pa.Super. 11, 19, 635 A.2d 1047, 1051 (1993) (citations omitted) (quoting *Festa v. Greenberg,* 354 Pa.Super. 346, 350, 511 A.2d 1371, 1373 (1986), *appeal denied,* 515 Pa. 580, 527 A.2d 541 (1987)). A physician need not disclose all known information. *Id.* at 21, 635 A.2d at 1051. Rather, the physician must advise the patient of the material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to undergo the operation. *Id.*

of medical certainty). After reviewing Dr. Gouge's report in its entirety, we conclude that it conveys the requisite degree of reasonable medical certainty.

■ We must preliminarily ascertain whether the decision to transfuse blood lost during surgery or the hazards associated with such transfusions trigger the doctrine of informed consent under Pennsylvania law. Appellee Dr. Rajan, relying on a series of cases involving the use of therapeutic drugs, argues that the requirements of informed consent attach only in the surgical context:

> The basis of an action for a lack of informed consent is that when a physician touches a patient a technical battery occurs, unless that touching is done with the patient's consent. An emergency situation is, of course, an exception. The case law has consistently refused to extend informed consent to the administration of therapeutic drugs. This Court has consistently limited informed consent to a battery theory. We will not expand informed consent here.
>
> In [*Boyer v. Smith*, 345 Pa.Super. 66, 497 A.2d 646 (1985) ], the Court held that the doctrine of informed consent should be limited to those cases involving surgical or operative procedures. The Court based this determination on the fact that the Pennsylvania Supreme Court, in *Gray v. Grunnagle* [423 Pa. 144, 223 A.2d 663 (1966) ], grounded the doctrine of informed consent "upon the legal theory that the performance of a medical procedure without a patient's informed consent constitutes a technical assault or battery." The Court in *Boyer* felt that to expand the doctrine to the administration of therapeutic drugs would totally obliterate the standard set forth in *Gray*, and therefore, felt bound by the decision of our Supreme Court in *Gray*. We must agree with the court in *Boyer*.

*Wu v. Spence*, 413 Pa.Super. 352, 355, 605 A.2d 395, 397 (1992). *See id.* (doctor not required to obtain a patient's informed consent to inject therapeutic drugs outside the realm of surgery). *See also Dible v. Vagley*, 417 Pa.Super. 302, 612 A.2d 493 (1992), *appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993) (physician not held liable for failing to obtain informed consent before administering radiation treatments because those treatments did not involve surgery).

To the contrary, when surgical or operative procedures are involved, a physician must obtain informed consent as to injected drugs. *See Stover, supra*, 431 Pa.Super. at 25, 635 A.2d at 1054 (requiring a physician to disclose the attendant risks and alternatives to the surgical implantation of a mechanical heart valve, specifically that the valve would cause the patient's body to produce clots and therefore require the patient to take anti-coagulents). *See generally Sauro v. Shea*, 257 Pa.Super. 87, 390 A.2d 259 (1978) (during surgery, a hospital staff member intravenously administered a general anesthetic that caused the patient's death; because the drug had been administered during surgery, the doctrine of informed consent was applicable). The doctrine of informed consent encompasses the entire surgical treatment and all of its recognized and material risks. *Stover*, 431 Pa.Super. at 26, 635 A.2d at 1054. Both the method of insertion and the potential latent harm of *any substance* injected, inserted, or otherwise introduced into the patient's body and left there *during surgery* may be the subject of informed consent. *Id.*

In the instant case, decedent underwent surgery on December 17, 1984 between 7:55 a.m. and 12:15 p.m. The certified record reveals that the fatal transfusion was administered on December 17, 1984 at 7:30 p.m.[2] Because the contaminated blood was not introduced into the patient's body during surgery, appellee Dr. Rajan was not required to disclose the attendant risks and alternatives to transfusion.[3] Consequently, the lower court did not err in granting summary judgment

2. Decedent was also given a transfusion during surgery at 10:40 a.m. We shall assume for the purposes of argument that Dr. Rajan was required but failed to obtain informed consent to introduce a substance into the decedent's body during surgery. There is no evidence that this unit of blood was tainted. As such, appellant has failed to show that this particular breach of duty caused the specified harm.

3. A panel of this court has acknowledged "a degree of artificiality in creating a distinction which limits the touching required for actionable informed consent to be the surgical cut. .... However, it appears that until such time as our supreme court expands the technical assault definition, such artificiality must hold sway." *Stover v. Association of Thoracic & Cardiovascular Surgeons*, 431 Pa.Super. 11, 26 n. 6, 635 A.2d 1047, 1054 n. 6 (1993).

in favor of appellee Dr. Rajan on the issue of informed consent.

Appellant's final allegation of error concerns the purported negligence of appellee Dr. Gordon Eck in treating decedent after she was diagnosed as HIV positive. In attempting to state a *prima facie* case, as set forth in *Mitzelfelt, supra,* appellant relies on the expert report of David H. Solis, D.O.:

> To review, it is my opinion that Dr. Eck did not meet the standard of care for a family physician in the treatment of his patient, Helen Perpinka from the time that she was discovered to be HTLV III (HIV) positive to the time that she was referred to an infectious disease specialist. . . . It is my opinion that because he chose not to refer Mrs. Perpinka to an infectious disease specialist that he undertook these awesome responsibilities on his own and he was ill-prepared to carry them out. This *in all likelihood* delayed the administration of anti-viral medication which *may have hastened* the onset of opportunistic disease in Mrs. Perpinka and caused her illness to progress sooner than it might have.

R. at 74a.

As set forth above, to establish a *prima facie* case of malpractice, a plaintiff must present an expert witness who will testify to a reasonable degree of medical certainty that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. *Mitzelfelt, supra,* 526 Pa. at 62, 584 A.2d at 892. An expert need not testify with absolute certainty or rule out all possible causes of a condition. *Id.* Likewise, the testimony need not be expressed in precisely the language used to enunciate the legal standard. *See In re Jones,* 432 Pa. 44, 246 A.2d 356 (1968) (medical testimony need not conform to precise statutory definitions). Rather, expert testimony should be reviewed in its entirety to assess whether it expresses the requisite degree of medical certainty. *McCann v. Amy Joy Donut Shops,* 325 Pa.Super. 340, 343–44, 472 A.2d 1149, 1151 (1984) (*en banc* "An expert fails this standard of certainty if he testifies 'that the alleged cause

"possibly", or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.'" *Kravinsky v. Glover*, 263 Pa.Super. 8, 21, 396 A.2d 1349, 1356 (1979) (citations omitted). After reviewing the expert report in its entirety, we conclude that Dr. Solis has not expressed the requisite degree of medical certainty. Accordingly, appellant has failed to state a *prima facie* case of medical malpractice. As such, the lower court properly granted summary judgment in favor of appellee Dr. Eck.

Order affirmed in part and reversed in part. We remand for further proceedings with respect to the negligence claim against appellee Dr. Rajan. Jurisdiction is relinquished.

BECK, J. files a concurring statement.

BECK, Judge, concurring.

I concur in the majority opinion. I write separately to emphasize my discomfort with the distinction between operative and nonsurgical procedures in our informed consent law. The artificial nature of the distinction is highlighted in this case where the fatal blood transfusion occurred within eight hours after surgery was completed, and was ostensibly administered *to replace blood lost during that surgery*. However, because the law on this issue is clear, I concur.