## Stefanou v. Pearce

C.P. of Lehigh County, no. 97-C-0707.

*Richard H. Pepper,* for plaintiff.
*Timothy T. Stevens,* for defendant.

REIBMAN, *J.,* June 7, 1999—Before the court is the motion for summary judgment on behalf of defendant, John T. Pearce, and Patricia L. Stefanou's opposition thereto.

Patricia L. Stefanou instituted this personal injury action seeking both economic and noneconomic damages after the vehicle she was driving was rear-ended by John T. Pearce's vehicle on April 1, 1995 in Allentown, Lehigh County. Defendant moves for summary judgment on the ground that plaintiff's claim for noneconomic damages is barred under section 1705 of the Motor Vehicle Financial Responsibility Law because she has not suffered a "serious injury." [1]

"Summary judgment is properly entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law." *Smitley v. Holiday Rambler Corp.,* 707 A.2d 520, 525 (Pa. Super. 1998). The burden rests squarely on the moving party to prove that no genuine issue of material fact exists. *Id.* However, an adverse party is required to identify in the response to the summary judgment motion "evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." *Eaddy v. Hamaty,* 694 A.2d 639, 643 (Pa. Super. 1997) (citing Pa.R.C.P. 1035.3).

In reviewing a motion for summary judgment, the record is examined in the light most favorable to the non-moving party and all doubts are to be resolved

---

1. The statutory language relating to the limited tort option was enacted as part of the 1990 omnibus amendments to the MVFRL. Act 6, 1990, Feb. 7, P.L., no. 6, 75 Pa.C.S. §1701 et seq.

against the moving party. *Long v. Yingling,* 700 A.2d 508, 512 (Pa. Super. 1997). Moreover, summary judgment should be granted only in cases that are free and clear from doubt. *Hoffman v. Brandywine Hospital,* 443 Pa. Super. 245, 250, 661 A.2d 397, 399 (1995).

It is undisputed that at the time of the accident plaintiff was covered under an automobile insurance policy issued by Erie Insurance Group. It is also undisputed that under this policy, plaintiff selected a limited tort option pursuant to section 1705 of the MVFRL. Section 1705 states in pertinent part that: "[e]ach person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss. . . ."

Section 1702 of the MVFRL defines "serious injury" as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." Consequently, because plaintiff selected the limited tort option, plaintiff is required to establish that she sustained a "serious injury" before she can recover for noneconomic losses.

The Pennsylvania Supreme Court recently declared that the ultimate determination of whether a plaintiff has suffered a "serious injury" should be made by the jury in all but the clearest of cases. *Washington v. Baxter,* 553 Pa. 434, 446, 719 A.2d 733, 740 (1998).[2] In *Wash-*

---

2. The *Washington* court took an exhaustive look at the Superior Court's decision of *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), and found that the Superior Court had misinterpreted

*ington,* the court was faced with a plaintiff who had selected a limited tort option who was seeking non-economic damages for alleged injuries he suffered to his right foot following an automobile accident. In addressing whether or not plaintiff had a "serious injury," the court adopted the definition of "serious impairment of body function" set forth in the seminal case of *Di-Franco v. Pickard,* 427 Mich. 32, 37, 398 N.W.2d 896, 900 (1986) which states that:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." *Washington,* 553 Pa. at 447, 719 A.2d at 740.

The court applied this definition to the record before it and found summary judgment was proper because it was clear that plaintiff failed to adduce sufficient evidence that he suffered a "serious injury." The court stated:

---

the intent of the legislature and improperly required the trial judge to make, in all cases, the ultimate decision of whether a plaintiff had suffered a "serious injury."

"[C]learly, it is insufficient for appellant to show that there has been some injury—no matter how minor—in order to avoid the entry of summary judgment against him. Were we to fail to require appellant to adduce evidence that not only was there an injury, but that it was also serious, before allowing him to present his case to the jury, we would make a mockery out of the summary judgment standard. Although appellant has introduced evidence that there is some type of arthritis or coalition in his foot, he has failed to show that this injury has had such an impact on him so that it constitutes a serious injury." *Washington,* 553 Pa. at 449, 719 A.2d at 741.

Even viewing the evidence in the light most favorable to plaintiff as the non-moving party, it is clear that reasonable minds could not differ that plaintiff's injury was not serious and, therefore, summary judgment is proper. Plaintiff did not lose consciousness or suffer any lacerations, abrasions or contusions as a result of the accident. Several hours after the accident, she presented to an area emergency room with complaints of tightness in her back and neck, a strange sensation in her fourth and fifth fingers and an inability to write. X-rays were taken of plaintiff's neck and back. An emergency room physician rendered a diagnosis of moderate cervical strain, herniated disc, and noted traces of degenerative disc disease.

Plaintiff was later seen by her family physician who confirmed the earlier diagnosis and referred plaintiff to a neurosurgeon, Gerald M. Zurpruk M.D. Dr. Zurpruk performed anterior cervical disc extension at C5-6 on October 9, 1995. Plaintiff was discharged that same day, placed on bed rest for three weeks and underwent physical therapy.

According to the record, the procedure performed by Dr. Zurpruk corrected plaintiff's herniated disc and plaintiff was discharged from physical therapy after five months. Thereafter, plaintiff began to complain of general aches and pains, headaches, and dizziness. Plaintiff was diagnosed with myofascitis and fibromyalgia.[3]

Plaintiff admits she was not disfigured from the accident. Rather, she contends her injury is serious because she has chronic pain throughout her body which has affected her daily life both at work and at home. However, the record indicates that the injury plaintiff suffered from the accident, the herniated disc, has been corrected and that plaintiff's current medical complaints are the result of degenerative disc disease which predated the accident as opposed to being the result of the accident. For example, an orthopedic surgeon, Eugene I. Disalvo M.D. opined, to a reasonable degree of medical certainty:

"It is my opinion that [plaintiff's] present symptoms are a result of degenerative joint and disc disease which antedated the motor vehicle accident on April 1, 1995, and of the fibromyalgia syndrome which is not the result of trauma.

"I do not believe she requires any further treatment as a result of the motor vehicle accident in question although she may require further treatment for the degenerative joint and disc disease and for the fibromy-

---

3. Myofascitis is defined as "[i]nflammation of a muscle and its facia (a fibrous membrane covering, supporting, and separating muscles)." Fibromyalgia or fibromyositis is defined as "[a] group of common nonspecific illnesses characterized by pain, tenderness, and stiffness of joints, capsules, and adjacent structures." American Jurisprudence, Proof of Facts, Cyclopedic Medical Dictionary, 1171, 653, 670 (16th ed. 1981).

algia." See Dr. Disalvo's report of September 22, 1998 at pp. 4-5.

Further, Richard A. Close M.D. opined, to a reasonable degree of medical certainty:

"In conclusion, the [plaintiff] suffered a herniated disc as the result of her April 1, 1995 MVA. This was surgically corrected and she recovered from this as of February of 1996. Her present problems are as the result of her ongoing degenerative arthritis and her myofascitis, neither of which are related to the alleged MVA." See Dr. Close's report of December 5, 1998 at p. 3.

Finally, plaintiff's own treating physiatrist, Raymond Bruno D.O., opined that plaintiff's myofascitis is not related to the accident.

In response, plaintiff contends her subjective complaints establish she suffered a serious injury. In addition, plaintiff submitted several letters from various physicians which indicate that plaintiff's current complaints are the result of the accident and do not predate the accident as defendant suggests.

First, plaintiff's subjective complaints are insufficient to survive a motion for summary judgment. Plaintiff's contentions involve issues concerning medical diagnosis and causal connections which clearly require more than just plaintiff's testimony—they require expert confirmation. Where a cause of a plaintiff's injury lies beyond the knowledge or expertise of the average layperson, Pennsylvania law requires that the plaintiff present competent expert testimony, based on a reasonable degree of medical certainty. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990). This principle is based upon the general acknowledgment that the complexities of the human body place questions as to the cause of pain or injury are beyond the knowledge of the

average layman. *Hamil v. Bashline,* 481 Pa. 256, 266-67, 392 A.2d 1280, 1285 (1978).

Next, the letters plaintiff attached to her response to defendant's motion for summary judgment cannot be considered. As noted by the court in *Washington, supra,* Pa.R.C.P. 1035, which governs motions for summary judgment, mandates that only competent evidence may be used when either moving for or refuting a motion for summary judgment. *Washington,* 553 Pa. at 437 n.4, 719 A.2d at 735 n.4. Further, competent evidence comes from depositions, answers to interrogatories, admissions on file and supporting affidavits. Pa.R.C.P. 76 defines an affidavit as: "a statement in writing of a fact or facts, signed by the person making it, that either (1) is sworn to or affirmed before an officer authorized by law to administer oaths, or before a particular officer or individual designated by law as one before whom it may be taken, and officially certified to in the case of an officer under seal of office, or (2) is unsworn and contains a statement that it is made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsifications to authorities; . . . ."

Plaintiff's letters are not deposition testimony, answers to interrogatories or admissions on file. The letters cannot be considered supporting affidavits because they were neither sworn to nor did they contain a statement pursuant to 18 Pa.C.S. §4904. Moreover, only one of the eight letters contains a medical opinion to a reasonable degree of medical certainty and even this letter fails as an affidavit.[4] Therefore, for the foregoing rea-

---

4. Plaintiff was on notice that her letters were incompetent evidence. However, plaintiff at no time rectified the flaws in her evidence. Had she taken such action, however, the court would be faced with a different situation and would have denied defendant's motion based on the Supreme Court's holding in *Washington, supra.*

sons, defendant's motion for summary judgment is granted and plaintiff is barred from seeking noneconomic damages.

### ORDER

And now, June 7, 1999, upon consideration of the motion for summary judgment on behalf of defendant, John T. Pearce, plaintiff's opposition thereto, and after oral argument thereon, and for the reasons set forth in the accompanying opinion, it is ordered that said motion is granted.

It is further ordered that plaintiff is barred from seeking noneconomic damages.