## Boscaino v. Centre Medical and Surgical Associates

202

C.P. of Centre County, no. 2005-1757.

*Craig E. Frischman* and *James A. South,* for plaintiff.
*Darryl R. Slimak,* for defendants.

KISTLER, *J.,* September 20, 2006—Presently before this court is defendants Centre Medical and Surgical Associates and Dr. Theodore J. Hovick Jr.'s motion to limit Dr. O'Shea's deposition testimony. In consideration of the briefs and sur briefs submitted by the parties and after oral argument, this court determines defendants' motion is denied.

## PROCEDURAL AND FACTUAL BACKGROUND

On or about May 11, 2005, plaintiff Antoinette Boscaino filed a medical malpractice complaint against defen-

dants Medical Surgical Associates and Theodore J. Hovick Jr. M.D. In her complaint, plaintiff alleges she suffered second- and third-degree burns to her labia as a result of Dr. Hovick's use of a cryogenic device.

On October 28, 2003, plaintiff presented to Centre Medical Surgical Associates for treatment of vaginal bleeding and discharge. At that time, and following an initial examination, Dr. John O'Shea recommended plaintiff undergo a surgical procedure, whereby a cryogenic surgical device would be utilized to treat plaintiff's condition. The procedure consisted of, in essence, the insertion of a probe into plaintiff's vagina and the application of a cryogenic tip upon the affected area for a series of cryogenic "freezes" of the suspicious lesion.

On November 14, 2003, plaintiff did undergo the procedure prescribed by Dr. O'Shea. However, because Dr. O'Shea was unavailable to perform the procedure, Dr. Theodore J. Hovick Jr. performed the procedure in Dr. O'Shea's absence. During the procedure, plaintiff claims she experienced "excruciating" pain, which she continued to experience well after the procedure and her arrival home. At the conclusion of plaintiff's procedure under Dr. Hovick's care, plaintiff was advised to go home and follow a certain prescribed treatment regime, which included the use of ice to decrease swelling. Plaintiff did go home and claims she did follow the instructions given her. However, she also claims the pain she was experiencing never ceased and "she noted that her vulva, labia, and perianal region appeared red, swollen and appeared to be burned." (Plaintiff's brief at 3.)

Some 10 days subsequent to the cryo procedure, on or about November 24, 2003, plaintiff returned to Centre Medical Surgical Associates, noting the same pain, swelling and redness. This time plaintiff was attended to by Dr. O'Shea. Dr. O'Shea, after examining plaintiff, concluded and noted in his physician's notes that plaintiff had suffered second- and third-degree burns, with ulcerations to her vulva and perianal region. (Plaintiff's brief at 3-4.) Dr. O'Shea also attributed plaintiff's burns as being caused by either a chemical reaction or direct contact with nitrous oxide. Thereafter, plaintiff continued her care with Dr. O'Shea through February 18, 2004, which consisted of six additional office visits and additional prescribed treatment.

On April 12, 2006, defendant filed this instant motion seeking to preclude Dr. O'Shea from testifying as to his medical opinions formed during his subsequent treatment of plaintiff for burns she claims she received.

This litigation is presently in the discovery phase of the trial process.

## DISCUSSION

Defendants' motion seeks to preclude Dr. O'Shea's testimony as it relates to any and all opinions made during his treatment of plaintiff. Although Dr. Hovick actually performed the procedure which is the basis for this lawsuit, Dr. O'Shea subsequently treated plaintiff for her pain, burns and other related effects, allegedly received from Dr. Hovick's negligent care. It was during Dr. O'Shea's treatment of plaintiff that certain medical opinions were made by Dr. O'Shea as to what was the root

cause of plaintiff's injuries. Defendants believe that Dr. O'Shea's opinions are both inadmissible and an improper subject for discovery through deposition. Accordingly, defendants have filed this instant motion, asking this court to preclude and/or limit Dr. O'Shea's deposition testimony.

## A. *Discoverability Versus Admissibility*

The defendants contend Dr. O'Shea cannot be compelled, under the law, to divulge his expert opinions, which he formed during his subsequent treatment of plaintiff. Defendants reply on the long-standing proposition that "the private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things." *Pennsylvania Company for Insurances on Lives & Granting Annuities v. Philadelphia*, 262 Pa. 439, 442, 105 A. 630 (1918). Defendants also contend that Dr. O'Shea's opinions should be precluded because they are speculative and equivocal, so that no "independently sufficient" basis exists.

Plaintiff, on the other hand, contends defendants' arguments are misplaced and not the law in Pennsylvania. Plaintiff asserts defendants have improperly placed their argument in the realm of "admissibility" testimony when, in fact, this is a "discoverability" issue. As argued by plaintiff, a non-party expert who participated in the treatment of the plaintiff is allowed to be deposed during the discovery phase of litigation as to his or her opinions formed during the treatment of the plaintiff.

.

In evaluating plaintiff's and defendants' arguments, this court will begin by reviewing the relevant court rules. Pursuant to Pennsylvania Rule of Civil Procedure, the permissible scope of discovery in civil litigation is broad: "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ...." Pa.R.C.P. 4003.1

Rule 4003.1(b) also adds that it is not an "objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Finally, as it relates to the permissible scope of discovery through deposition, the only limitations to Rule 4003.1 are set out in Pa.R.C.P. 4011, it provides:

"No discovery of deposition shall be permitted which:

"(a) is sought in bad faith;

"(b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;

"(c) is beyond the scope of discovery as set forth in Rule 4003.1 through 4003.6;

"(d) is prohibited by any law barring disclosure of mediation;

"(e) would require the making of unreasonable investigation by the deponent or any party or witness."

It is clear to this court that intent of the civil rules is to allow the discovery of medical opinions, even where those same opinions would otherwise be inadmissible at trial. There is no stated exception in Rule 4011, which would shield a treating physician from being deposed with regard to his treatment of a party plaintiff and opinion formed contemporaneously with a physician's treatment. Indeed, this is the clear distinction between "admissibility" and "discoverability."

Defendants rely heavily on case law to support their contention that Dr. O'Shea may not be deposed regarding his treatment of plaintiff. All of the cases defendants cite as authority, notwithstanding, preclude expert testimony *at trial.* Simply put, the issue at this point is: may Dr. O'Shea be deposed as to his opinions, factual or otherwise, made during his treatment of plaintiff subsequent to the November 24, 2003 cryo procedure?

In its argument, defendants rely most heavily on the cases of *Pennsylvania Company for Insurances on Lives & Granting Annuities v. Philadelphia,* 262 Pa. 439, 105 A. 630 (1918) and *Jistarri v. Nappi,* 378 Pa. Super. 583, 549 A.2d 210 (1988). These cases stand for the proposition that "[t]he private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things." *Jistarri,* 378 Pa. Super. at 599, 549 A.2d at 218, quoting *Pennsylvania Co. for Insurances, etc., Trustee v. Philadelphia,* 262 Pa. 439, 442, 105 A. 630 (1918). Defendants are quite right to label the preceding as a "well-settled principle." Nevertheless, the *Jistarri* principle applies to admissibility, not discoverability. Defendants, quite tellingly, fail to cite any case or court rule which precludes

the discovery of opinions, formulated by a treating physician and arising out of the treatment.

Defendants have not demonstrated to this court any legal doctrine or principle of law which precludes the discovery of physician's opinions made during the treatment of a party plaintiff. There is, however, authority that would allow Dr. O'Shea to be deposed with regard to his expert opinions. In *Wimer v. Macielek,* 42 D.&C.4th 347 (1999), the Court of Common Pleas in Crawford County acknowledged expert opinions are discoverable. In recognizing the intent of the discovery rules, the court stated that "[t]he general rule that opinions are discoverable cannot be read as absolute and in a vacuum." *Id.,* 42 D.&C.4th at 351. Although ultimately precluding the expert's deposition concluding the expert's testimony was irrelevant, this case demonstrates the general trend to allow the discovery of opinions, even from non-party deponents.

Finally, defendants' argument in favor of precluding Dr. O'Shea's testimony also seems to ignore the fact that Dr. O'Shea is not purely a third-party expert witness but is, also, a factual witness. There is no dispute that Dr. O'Shea actually cared for and treated plaintiff subsequent to the cryo procedure. The previously discussed case *Nappi* does hold that a non-party expert witness may not be compelled to give expert testimony as to the root cause of medical injury against his or her will. *Nappi,* 378 Pa. Super. 583, 599, 549 A.2d 210, 218 (1988). Nevertheless, this same principle does not hold true to discovery or deposition, which is necessarily broader in scope. And, because Dr. O'Shea was a subsequent treating physician, this court concludes he may be deposed as to his treat-

ment of plaintiff as well as to any medical opinions formed during said treatment.

In sum, the law does allow for the deposing of Dr. O'Shea with regards to his subsequent treatment of plaintiff as allowed under Pa.R.C.P. 4003.1. The scope of discovery is broad and expressly includes the discovery of expert opinions. Although Dr. O'Shea is not a party to this action, he did treat the plaintiff, and any opinions formed during his treatment would be relevant to this cause of action. Moreover, Dr. O'Shea's testimony is clearly relevant and is not precluded by any rule of evidence or any of the limitations in Pa.R.C.P. 4011.

### B. *Opinions Are "Speculative" and "Equivocal"*

Defendants next contend that Dr. O'Shea's opinions must be precluded because his medical opinions are clearly "equivocal" and "speculative." Dr. O'Shea did express certain medical opinions both during his treatment of plaintiff as well as documented in his physician's notes. Defendants believe these opinions, although rendered during Dr. O'Shea's treatment of plaintiff, must be precluded because these are "equivocal" and "speculative."

This argument follows, almost identically, the same analysis as defendants' prior argument. Generally speaking, the case law in Pennsylvania does preclude testimony of expert witnesses which is "speculative" (or theoretical) and "equivocal" (or uncertain and subject to more than one interpretation). See *Cohen v. Albert Einstein Medical Center,* 405 Pa. Super. 392, 591 A.2d 720

(1991), see also, *Hoffman v. Brandywine Hospital,* 443 Pa. Super. 245, 661 A.2d 397 (1995). Notwithstanding, each of these cases involves speculative or equivocal testimony by experts at trial, not at the discovery level. Plaintiff may explore both Dr. O'Shea's subsequent treatment of plaintiff, on a factual level, and his opinions formed during this treatment.

## C. *Privilege*

Defendants' final contention is that Dr. O'Shea's deposition testimony is privileged and, thus, not proper for discovery. Rule 4003.1 of the Pennsylvania Court Rules does prohibit the discovery of privileged opinions. There is no dispute as to Dr. O'Shea's role with regard to this litigation: Dr. O'Shea is a non-party physician who treated plaintiff for her alleged injuries subsequent to the cryo procedure.

The doctrine of privilege is well-settled in Pennsylvania and, when properly invoked, will preclude testimony by any witness bound privilege. However, privilege only applies when it is asserted by the individual or party "privileged" to assert it. Doctor/patient is intended to protect and keep confidential the matters discussed by and between a doctor and his or her patient. But this privilege is for the patient to assert, to preclude a doctor willing to testify, or by a doctor in the interests of his or her patient. In the instant matter, plaintiff desires Dr. O'Shea to testify and is not asserting privilege and Dr. O'Shea, while he clearly does not want to testify, is unable to assert doctor/patient privilege because his patient has "waived" the privilege.

In addition, there is the collateral assertion of expert witness privilege. In essence, this form of privilege protects an expert witness, hired by one party, from being compelled to divulge his or her expert opinions to the benefit of an adverse party. Although an expert witness is always subject to cross-examination, this privilege protects an expert, hired by one party, from being "pirated" and utilized by an adverse party. This is a form of privilege recognized by Pa.R.C.P. 4003.1, which permits the discovery of opinion so long as these opinions are not privileged. *Graham v. I.M.O. Industries Inc.,* 16 D.&C.4th 492, 493 (1992).

Because Dr. O'Shea has personal, firsthand knowledge about this matter, this form of privilege does not preclude or prohibit his deposing. Expert opinions formed by a treating physician, in lieu of litigation, are allowable and not subject to the preclusive effects of privilege. *Kurian ex rel. Kurian v. Anisman,* 851 A.2d 152 (Pa. Super 2004), see also, *Ferguson v. Redstone Acoustical & Flooring Inc.,* 21 D.&C.3d 475 (1981). Dr. O'Shea did form his medical opinions during his treatment of plaintiff. Because Dr. O'Shea has firsthand knowledge and formed his opinions around his first-hand knowledge, privilege does not preclude his deposition testimony.

### D. *Conclusion*

In sum, because it is permissible to discover expert opinions which are not privileged, Dr. O'Shea may be deposed as to his treatment of plaintiff and any opinions formed during said treatment. Dr. O'Shea has first-hand knowledge of plaintiff's alleged injuries and, quite possibly, the root cause of the injuries. The Pennsylvania Rules of Court permit such discovery and Dr. O'Shea's

opinions are not protected by any legal privilege. Furthermore, Dr. O'Shea's deposition testimony is clearly relevant to plaintiff's case and, at least at this point, a proper subject to be explored at the discovery stage of litigation. Each of the matters decided, herein, relates to "discoverability" and not "admissibility." This court makes no determination as to the admissibility of any of Dr. O'Shea's opinions or medical conclusions—defendants may, where appropriate, raise these legal issues again as to the admissibility.

## ORDER

And now, September 20, 2006, for the reasons articulated herein, this court determines defendants' motion to limit Dr. O'Shea's expert opinion testimony is hereby denied.