**Vicari v. Spiegel**

*Stephen E. Raynes,* for plaintiff.
*Bart C. Tuttle,* for defendnat Jefferson Health System.
*Fredric L. Goldfein,* for defendant Spiegel.

SYLVESTER, *J.,* April 19, 2007—

## I. FACTS AND PROCEDURAL HISTORY

On April 1, 2002, Barbara Vicari died from tongue cancer. Counsel for her estate, in his opening argument, claimed that Mrs. Vicari was never offered chemotherapy. See Notes of Testimony, May 1, 2006. (N.T., pp. 7, 42, 44-47.) That alleged omission was the gravamen of their case. A claim for medical malpractice was brought. Trial began on May 1, 2006.

Counsel for the estate produced medical experts. Their testimony was designed to support an action for medical

negligence. The trial court entered a nonsuit on May 2, 2006. On November 30, 2006, plaintiff's statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) was filed. The trial court has carefully reviewed this statement and the notes of testimony. For the reasons that follow, plaintiff's appeal is utterly without merit and should be dismissed. The trial court will address those issues worthy of comment.

## II. DISCUSSION

Plaintiff's main complaint is that the nonsuit entered on the second day of trial should not have been granted "because the trial court applied an incorrect standard of law in striking Dr. Berman's testimony on the basis that Dr. Berman did not state on the record that the opinions expressed where (sic) to a 'reasonable degree of medical certainty' when the totality of the testimony (including his testimony on cross-examination) made clear that the opinions expressed were not speculative and were held to a reasonable degree of medical certainty, and the Pennsylvania Supreme Court has held that experts are not required to use 'magic words.'" Plaintiff's statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), pp.1-2.

Plaintiff is mistaken. The law is clear. In *Hoffman v. Brandywine Hospital,* 443 Pa. Super. 245, 661 A.2d 397 (1995), the court addressed this very issue:

"[4] To state a prima facie cause of action for malpractice, a plaintiff must establish that (1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a

substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990). Moreover, a plaintiff must 'present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.' *Id.* at 62, 584 A.2d at 892." 443 Pa. Super. at 250, 661 A.2d at 399-400.

In the case at bar, the direct testimony of Dr. Berman was not conducted properly. The jury and the court were confused. The words "reasonable degree of medical certainty" were painfully absent.

Plaintiff attempts to rely upon the notion that "no magic words" are necessary. See *e.g.,* Pa. Rules of Evidence, 702(7), p. 554. Again, plaintiff is mistaken.

The seminal case of *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971), provides guidance. In McMahon, supra, expert testimony that an injury was "consistent with" and "probably caused by" an auto accident was inadequate. The Supreme Court, per Mr. Justice O'Brien, stated:

"This issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a medical expert is evidence. If the fact-finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact-finder to award damages for a particular condition to a plaintiff, it must find as a fact that the condition was legally caused by the defendant's conduct. Here, the only evidence offered was that it was 'probably'

caused, and that is not enough. Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.

"Because Mrs. McMahon's doctor's testimony was not made with sufficient certainty, it was not legally competent evidence and a new trial must be granted." *Id.* at 486, 276 A.2d at 535.

Furthermore, cases are legion that medical evidence must be presented to the jury with certainty. A jury cannot be permitted to speculate on the issue of causation. There must be evidence on the record which satisfies the standard of certainty.

"In *McCrosson v. Philadelphia Rapid Transit Co.,* 283 Pa. 492, 495-96, 129 A.2d 568, 569 (1925), our Supreme Court set forth a legal test concerning the sufficiency for causation testimony by expert witnesses which 'required the expert to testify that, in his "professional opinion, the result in question [did] come from the cause alleged. . . ." ' Numerous cases since *McCrosson* have established that the expert witness must assert that the result in question actually came from the cause alleged. It is not enough to say that the alleged cause 'possibly,' or 'could have' led to the result, that it 'could very properly account' for the result, or even that it was

'very highly probable' that it caused the result." *Niggel v. Sears Roebuck & Co.,* 219 Pa. Super. 353, 354, 355, 281 A.2d 718, 719 (1971); *Menarde v. Philadelphia Transportation Co.,* 376 Pa. 497, 103 A.2d 681 (1954); *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A.2d 256 (1926); *Moyer v. Ford Motor Co.,* 205 Pa. Super. 384, 209 A.2d 43 (1965). Moreover, "[a] less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence." *McMahen,* 276 A.2d at 535, quoting *Menarde.*

In the case at bar, the medical expert, Dr. Berman, was merely asked if he had an opinion. See N.T., May 2, 2006, pp. 35-40. Most importantly, he used the words "potentially," "high propensity" and "again re-indicating a prior propensity for further spread." See N.T. May 2, 2006 p. 39.

This medically meaningless language does not satisfy the legal standards outlined above. For all of these reasons, a nonsuit was properly granted.