# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delaware Riverkeeper Network, the :
Delaware Riverkeeper, Maya :
Van Rossum, and Member, :
Kathleen Stauffer, :
                 Petitioners :
 :
            v. : No. 525 M.D. 2017
 : Argued:  March 17, 2021
Pennsylvania Department of :
Environmental Protection, :
                 Respondent :

BEFORE:     HONORABLE P. KEVIN BROBSON, President Judge
                   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE MARY HANNAH LEAVITT, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE ELLEN CEISLER, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED:  August 3, 2021**

The Delaware Riverkeeper Network, Delaware Riverkeeper Maya Van Rossum, and Member Kathleen Stauffer (collectively, Riverkeeper) filed a petition for review (Petition) in this Court's original jurisdiction, seeking injunctive and declaratory relief against the Pennsylvania Department of Environmental Protection (DEP).  Riverkeeper seeks to compel DEP to act after "manifest neglect and dilatory conduct, over a period of [17] or more years, to clean up or cause the clean up of past and present hazardous releases at the Bishop Tube Hazardous Waste Site"

(Site).  (Petition ¶ 2.)  Riverkeeper argues that DEP's inaction violates DEP's duties under the Clean Streams Law,[1] the Hazardous Sites Cleanup Act (HSCA),[2] and article I, section 27 of the Pennsylvania Constitution (Environmental Rights Amendment).[3]  Before this Court is Riverkeeper's Motion for "Partial Summary Relief/Summary Judgment" (Motion), in which Riverkeeper asks the Court to, among other requests, direct DEP to comply with its statutory obligations and "[o]rder [] [DEP] to select and implement an Interim Response to remove, treat, and/or mitigate known source-area contamination from the . . . Site[.]"  (Motion at 1-2.)  Because there are issues of material fact in dispute, we must deny the Motion.

## I.  BACKGROUND

### A. *The Petition*

Delaware Riverkeeper Network is a non-profit organization with the mission of protecting and restoring "the Delaware River and its tributaries, habitats, and resources."  (Petition ¶ 11.)  Some of Delaware Riverkeeper Network's 19,000 members live adjacent to the Site.  (*Id.* ¶¶ 11-12.)  On November 8, 2017, Riverkeeper filed the Petition alleging DEP has allowed the spread of hazardous substances on and around the Site in violation of the Clean Streams Law, the HSCA, and the Environmental Rights Amendment.  On December 7, 2017, DEP filed

---

[1] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001.

[2] Act of October 18, 1988, P.L. 756, *as amended*, 35 P.S. §§ 6020.101-6020.1305.

[3] Article I, section 27 of the Pennsylvania Constitution states that

[t]he people have a right to clean air, pure water, and [] the preservation of the natural, scenic, historic and esthetic values of the environment.  Pennsylvania's public natural resources are the common property of all the people, including generations yet to come.  As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, § 27.

preliminary objections to the Petition, which this Court overruled. *Del. Riverkeeper Network v. Pa. Dep't of Env't Prot.* (Pa. Cmwlth., No. 525 M.D. 2017, filed July 25, 2018) (*Riverkeeper I*). Following *Riverkeeper I*, DEP filed an Answer and New Matter to the Petition. On October 8, 2018, Riverkeeper filed its Answer to the New Matter. Thereafter, the parties commenced discovery.[4] On October 1, 2020, Riverkeeper filed the Motion asking for partial summary relief.[5]

### B. The Site and DEP's Involvement

The Site is approximately 13.7 acres located on Malin Road, East Whiteland Township, Chester County. (Petition ¶ 19; Answer to Motion (Answer) ¶ 1.) Running through and alongside the Site is Little Valley Creek, which "is part of the Valley Creek Watershed[,] . . . joins with the Schuylkill River in the Delaware River Basin[,]" "and is a recognized Exceptional Value [(EV)] Stream, entitled by Pennsylvania Law to the highest anti-degradation protection standards in the State." (Motion ¶ 4; Answer ¶ 4.) The Site formerly housed the Bishop Tube facility and is now owned by Constitution Drive Partners (CDP). (Petition ¶ 25; Motion ¶ 1; Answer ¶ 1.) The Bishop Tube facility manufactured metal alloy tubes from 1951 through 1999. (Petition Exhibit (Ex.) E at 2.) The Site has historically been used for industrial uses, and CDP initially intended to use the Site for commercial

---

[4] On April 3, 2020, Riverkeeper filed a "Motion to Compel and Motion for Declaratory Judgment that [DEP] Waived Privilege Over Documents [I]t Inadvertently Disclosed" (Motion to Compel), alleging that during discovery documents were inadvertently disclosed by DEP, DEP failed to properly invoke any privilege, and DEP's excessive delay in rectifying the disclosure caused a waiver of any privilege. This Court denied the Motion to Compel. *Del. Riverkeeper Network v. Pa. Dep't of Env't Prot.* (Pa. Cmwlth., No. 525 M.D. 2017, filed Mar. 2, 2021).

[5] At oral argument, Riverkeeper explained that its request for relief was partial because, at this time, it seeks only an interim response from DEP, rather than the complete remediation of the Site.

purposes but has subsequently sought funding and approval to use the Site for residential purposes. (Petition ¶ 27.)

As a result of the manufacturing of alloy tubes, the Site is contaminated with trichloroethylene (TCE), other chlorinated volatile organic compounds (VOCs), heavy metals, and other hazardous substances, which have migrated into the groundwater and surface water. (Petition Ex. E at 2-4; Motion ¶¶ 1-3; Answer ¶¶ 1-3.) The TCE concentration in the groundwater at and near the Site, which is in the hundreds of thousands of parts per billion, is alleged to exceed the acceptable statewide health standard of five parts per billion for TCE concentration. (Petition ¶ 35.)

DEP's predecessor, the Department of Environmental Resources, first learned of the TCE contamination in the mid-1980s after an investigation was performed by the United States Environmental Protection Agency. (Petition ¶ 21; Motion ¶ 2; Answer ¶ 2.) DEP alleges that, before the 1980s, TCE's effects were largely unknown to DEP, and sampling for TCE did not occur until that time. (Answer ¶ 2.) DEP states that it became aware of the other pollution on the Site, including

> pollution to groundwater and surface water from fluoride, sewage, acids, nitrates, and some heavy metals in the early 1970s, and addressed that pollution at that time by entering into a[] consent order and agreement with the operator in 1974 and requiring Christiana Metals Corporation[6] to cease unpermitted discharges of its industrial waste and sewage from the Bishop Tube facility to one or more cesspools, on-lot disposal system, and to the ground[,] and to require a connection to public sewer system.

---

[6] Christiana Metals Corporation operated the facility on the Site between 1974 and 1989. (Petition Ex. E at 3.)

4

(*Id.* (citing Dustin A. Armstrong's[7] (Armstrong) Jan. 8, 2020 Deposition (Armstrong Jan. Dep.) at 325-26, Motion Ex. E; Armstrong's Nov. 21, 2019 Deposition (Armstrong Nov. Dep.), Exs. 2 and 4, Motion Ex. D; Answer Ex. A).)

Between the 1970s and the present: DEP has entered into numerous consent orders and agreements with different owners and/or operators of the Site; DEP, its hired consultants, or the Site's owners and/or operators have investigated, performed studies, and drafted reports regarding the Site's contamination and remediation, with the most recent being issued in 2019 and 2020; DEP has installed a water treatment system on a nearby residential property; DEP has identified potentially responsible parties (PRPs); and DEP has filed an action in the United States District Court for the Eastern District of Pennsylvania (District Court) against the PRPs. (Motion Ex. J; Answer Exs. A, B at 11, 16-18, 74, 142, and H-K; Armstrong Nov. Dep. at 25, 163-64, Exs. 2, 3 at 1-2, 4 at 4-5, and 6-7; Armstrong Jan. Dep. at 188-89, 206, 305, 325-26, 330, 337-38, and Exs. 27, 37 at 1, 29, 32.) In addition, DEP selected an Interim Response[8] in 2007 (2007 Interim Response), as set forth in a 2007 Statement

---

[7] Armstrong is an environmental protection specialist with DEP and has been working on the Site since around 1995. (Armstrong Nov. Dep. at 8-9.)

[8] An "[i]nterim response" is defined by Section 103 of the HSCA, 35 P.S. § 6020.103, as

[a r]esponse which does not exceed 12 months in duration or $2,000,000 in cost. An interim response may exceed these limitations only where one of the following applies:

(1) Continued response actions are immediately required to prevent, limit or mitigate an emergency.

(2) There is an immediate risk to public health, safety or welfare or the environment.

(3) Assistance will not otherwise be provided on a timely basis.

**(Footnote continued on next page…)**

5

of Decision, that proposed using an Air Sparging/Soil Vapor Extraction System (System) to remove contamination from the Site. (Armstrong Nov. Dep. at 34, 54, 79-80, 101-02, and Exs. 2, 6-8; Armstrong Jan. Dep. at 349-50; Motion Ex. G.) DEP also directed that the Site be fenced to prevent trespassers; oversaw the plugging of a leaking pipe; and reviewed a plan to remove contaminated soils from certain areas, known as "hot spots." (Answer Exs. B, D-F, L, and N; Armstrong Nov. Dep. at 81-82, 89-91, 98, 113-14, and Ex. 25; Armstrong Jan. Dep. at 188-89, 348-49, and Exs. 26, 27, and 37.)

### C. The Motion

Riverkeeper seeks partial summary relief asserting that there are no factual disputes regarding the length of time during which there has been "virtually no clean up of the Site and without . . . removal of the source TCE material that has been left to simply percolate into [groundwater] and ultimately transport (unimpeded) into Little Valley Creek and to threaten human health and the environment." (Motion ¶ 6.) The Motion states that the legal question

> is whether [] DEP's slow, lethargic, and ineffective attention to the known serious contamination on the Site, with specific regard to the failure to remove the known source area contamination, over such a lengthy period of time, violates its legal duties under the [] Clean Streams Law . . . ; the . . . [HSCA]; and the Environmental Rights Amendment[.]

(*Id.* ¶ 7.) Riverkeeper requests that the Court order DEP "to secure and/or perform an Interim Response action to address the source soils while it continues to prepare its final remediation," which, Riverkeeper contends, DEP "has promised for a

---

(4) Continued response action is otherwise appropriate and consistent with future remedial response to be taken.

6

substantial time without any performance." (*Id.* ¶ 8.) "Such Interim Response action is imperative, because the source areas of the Site create a significant risk to public health and the environment[.]" (*Id.* ¶ 9.) Riverkeeper is particularly concerned about the plan for residential development of the Site that was submitted before any removal or treatment of the contamination occurs. (*Id.* ¶ 10.) To support the Motion, Riverkeeper alleges that DEP has violated its legal duties under the Clean Streams Law, the HSCA, and the Environmental Rights Amendment by "fail[ing] to perform or cause the performance of the necessary remediation to remove or treat hot spot source material, to the detriment of the environment and rights of the community." (*Id.* ¶¶ 98-102.)

Riverkeeper further avers that, despite DEP having been informed that there were seven VOCs and nine metals in concentrations higher than permissible standards, DEP has not acted on these findings. (*Id.* ¶ 11.) Riverkeeper alleges that, due to this inaction, the contamination has spread and continues to spread beyond the Site into nearby groundwater and into Little Valley Creek, thereby threatening the residential neighborhood where Riverkeeper members live. (*Id.* ¶ 3; Petition ¶¶ 2, 57-58, 70-71, 73.) Riverkeeper maintains it is well known that children from the adjacent neighborhood play in the Little Valley Creek and have wandered into the Site, which has not been properly secured. (Motion ¶ 5.) Riverkeeper alleges that "[d]espite having financially solvent responsible parties and a Site developer, DEP has failed to clean up or order the cleanup of the Site, including the known source areas . . . ." (*Id.* ¶ 3.)

Additionally, Riverkeeper points out that DEP's 2007 Statement of Decision, issued to explain the 2007 Interim Response and the other actions or inaction taken by DEP and responsible parties, documented the release of hazardous substances,

7

their impact, and the need of the interim response by use of the System due to the danger and potential for migration. (*Id*. ¶¶ 48-50.) Riverkeeper asserts that through the 2007 Statement of Decision, DEP acknowledged the need for an interim response, but has "failed to follow through and perform one," or at least one that is effective, averring that the System failed at remediating the Site. (*Id*. ¶¶ 113, 115.) In short, Riverkeeper alleges "DEP continues to promise it will initiate a final remediation in the near future, [but] it continues to drag its feet and delay advancement of interim, near term and/or long term solutions for the [S]ite." (*Id*. ¶ 104.)

DEP admits that it has not fully remediated the Site or ordered the full cleanup of the Site but denies that it "has taken no action . . . to address [the] contamination at the Site, that [] [its] actions or inactions have threatened or harmed public health or allowed any contaminant to migrate, or that [] [it] does not intend to remediate the Site." (Answer ¶ 3.) It points out that Riverkeeper provided no record citations to the evidence claimed to support the Motion. (*Id.*) DEP alleges that, contrary to Riverkeeper's averments, it has taken action to attempt to remediate the situation, citing: its actions investigating and identifying the Site's contamination; the various consent orders and agreements entered into with PRPs, owners, or operators; the 2007 Interim Response; the plugging of the leaking pipe; and having PRPs remove additional contaminants and engage in an in-situ treatability study between 2011 and 2015. (*Id*. (citing Answer Exs. B at 16-25, 79, and F; Armstrong Nov. Dep. at 34, 54, 81-82, 101-02, 113-14, 122-23, 128-29, and Ex. 2, 6-8; Armstrong Jan. Dep. at 228-32, 236-37; Petition Ex. B).) DEP also asserts it has taken the first step to hold financially solvent responsible persons accountable for the Site's clean up by suing them in federal court, citing its 2008 Cost Recovery Action. While this action was

stayed until 2017, DEP has filed an Amended Cost Recovery Action to add additional responsible parties. (Answer ¶ 9 (citing Armstrong Nov. Dep. at 111, and Ex. 2); Petition ¶¶ 6-7; Motion ¶ 33.)

As to the particular actions taken on the Site, DEP maintains that it, along with the owner, implemented the 2007 Interim Response "by installing and overseeing the operation of [the] . . . [S]ystem that removed hundreds of pounds of chlorinated solvents . . . ." (Answer ¶ 6.) DEP had concerns about the ability of the System to operate effectively but "agreed on specific performance standards to meet the goals, given the circumstances." (Motion ¶ 54; Answer ¶ 54.) While the System did not meet "its flow rate performance standards due to problems operating with the high groundwater . . . [,]" DEP specifically denied Riverkeeper's allegation that the System did not operate as designed. (Motion ¶ 55; Answer ¶ 55.) DEP also states that the in-situ treatability study, the treatment preferred by the PRPs to the operation of the System, removed some contaminants. (Answer ¶ 59.) DEP denies that these actions have "had no positive impact on Little Valley Creek" and asserts that it has ensured no further discharge of contaminants into the ground and Little Valley Creek. (*Id.* ¶¶ 6, 59 (citing Armstrong Nov. Dep. at 34, 54, 81-82, 101-02, 113-14, and Ex. 2; Armstrong Jan. Dep. at 228-32, 236, 350; Answer Ex. C).)

As to the claimed delay in remediating the Site, DEP notes that Riverkeeper opposed "plans from 2016 to the present to excavate soil source hot spots, imped[ing] the very relief that it now requests and . . . delay[ing] the Site's clean[]up." (*Id.* ¶ 7.) DEP denies Riverkeeper's allegation that there is an "imperative need for an interim response" because: the one residence at risk from "the single known residential exposure pathway" was protected by the 1999 installation of the point of entry treatment (POET) system; a 2019 Remedial

9

Investigation Report shows that the VOC contamination is declining for both groundwater and surface water; and the remedial investigation had determined that "there is no unacceptable risk to human health from current exposure pathways that would pose a threat from the Site to a residential neighborhood where [Delaware Riverkeeper Network's] members [] live." (*Id*. ¶¶ 3, 9 (citing Armstrong Jan. Dep. at 338-39; Answer Ex. B at 11, 17, 74, 77-78, 104-06, 142, 147-48, Table B-1).) DEP further denies any allegations regarding threats to the health of children, as the current property owner took steps to secure the Site. (*Id.* ¶ 5.)

## II.    PARTIES' ARGUMENTS

Riverkeeper proffers three main arguments in support of the Motion. First, it contends DEP has failed, for decades, to require any responsible parties to remedy the contamination at the Site, and, thus, DEP has allowed TCE and other hazardous substances to be released into and to degrade Little Valley Creek, an EV stream into which no discharge is permitted. This failure, Riverkeeper contends, violates DEP's obligations under the Clean Streams Law and related regulations to, among other obligations, "[r]eceive and act upon complaints" and halt water pollution. (Riverkeeper's Brief (Br.) at 25-26 (citing Section 5(b)(6) of the Clean Streams Law, 35 P.S. § 691.5(b)(6);[9] *MFW Wine Co. v. Pa. Liquor Control Bd.*, 231 A.3d 50 (Pa. Cmwlth. 2020).) Second, it contends DEP's ineffective 2007 Interim Response and failure to timely take other steps to address the contamination of the Site violates Sections 301 and 501 of the HSCA, 35 P.S. §§ 6020.301, 6020.501, because DEP has a duty to, respectively, enforce and require compliance with that act and "respond to the dangerous release in <u>some</u> manner." (*Id*. at 35, 39 (emphasis in original).) Riverkeeper notes that Section 301(16) of the HSCA specifically requires

---

[9] Section 5 was added by Section 4 of the Act of July 31, 1970, P.L. 653.

DEP to implement any program under that act in accordance with the Environmental Rights Amendment, which DEP has not done. Third, Riverkeeper contends DEP's inaction, when it knew that action was needed to remediate the Site and stop the migration of hazardous substances, violated DEP's duties under the Environmental Rights Amendment to "**remedy**[] . . . the degradation, diminution, or depletion of our public natural resources." (*Id.* at 47, 49 (quoting *Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 931 (Pa. 2017)) (emphasis in original).) This inaction also violated DEP's role as trustee under the Environmental Rights Amendment, as DEP is not acting with prudence toward the Commonwealth's natural resources, which is the corpus of the public trust. (*Id.* at 49-52.)

DEP responds that summary relief must be denied because there are numerous issues of material fact that are in dispute. (DEP's Br. at 16.) Contrary to Riverkeeper's allegations of inaction, DEP has adduced evidence, and will provide more evidence at trial, of its efforts to work within its authority to remediate the Site and to act with prudence as required by the Environmental Rights Amendment, in a situation where the evidence will show that there were "significant obstacles" related to the Site. (*Id.* at 7-12, 16, 47-48.) DEP also asserts that, even though the Motion must be denied because of disputed issues of material fact, it fulfilled its duties under the Clean Streams Law, the HSCA, and the Environmental Rights Amendment by preventing public exposure while conducting investigations to develop a comprehensive remedial response plan to clean up the Site and surrounding areas. (*Id.* at 18-49.) While Riverkeeper may be dissatisfied with DEP's pace and specific manner of implementing remediation, which it maintains are matters soundly within its sole discretion, DEP maintains that such does not create issues of undisputed fact or a violation of the environmental laws that Riverkeeper cites.

11

In its reply brief, Riverkeeper argues that partial summary relief is warranted as there are no genuine issues of material fact and only legal issues to decide in this case. (Riverkeeper's Reply Br. at 7.) Riverkeeper contends that DEP has not contested certain critical facts, such as when it became aware of the Site's contamination, that the Site has not been fully remediated, that one residential drinking well was contaminated, that there are several "hot spots" of known soil contamination, and that DEP's past interim responses have not been successful, all of which support Riverkeeper's request for partial summary relief. (*Id.* at 2-5.) According to Riverkeeper, it is not contested that DEP has not "perform[ed] or cause[d] the performance of 'actual' remediation" on the "hot spot" areas, and, as such, partial summary relief is warranted. (*Id.* at 7-8.) Riverkeeper maintains that "DEP has taken virtually no action" to prevent pollution in violation of the Clean Streams Law. (*Id*. at 12-14.)

## III. **DISCUSSION**

As acknowledged in *Riverkeeper I*, slip op. at 1, the Petition is in the nature of an action in mandamus, which is an action that seeks to compel a government agency to perform a mandatory, non-discretionary duty, *Diess v. Pennsylvania Department of Transportation*, 935 A.2d 895, 914 (Pa. Cmwlth. 2007), or to compel action where a government agency fails to act, *Chanceford Aviation Properties, L.L.P. v. Chanceford Township Board of Supervisors*, 923 A.2d 1099, 1108 (Pa. 2007). Mandamus cannot be used to compel a government agency to perform a mandatory duty in a particular way. *Odette's, Inc. v. Dep't of Conservation & Nat. Res.*, 699 A.2d 775, 783 (Pa. Cmwlth. 1997). Mandamus will "lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the [petitioner], a corresponding duty in the [respondent], and want of any other

12

appropriate or adequate remedy." *Chanceford Aviation Props.*, 923 A.2d at 1107-08 (internal quotation marks omitted).

Applications for summary relief filed in this Court's original jurisdiction are governed by Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), which provides that "[a]t any time after the filing of a petition for review . . . , the court may enter judgment if the right of the applicant thereto is clear." An application for summary relief under Rule 1532(b) is evaluated according to standard for a motion for summary judgment. *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). A motion for summary relief may only be granted when "**the dispute is legal rather than factual**," there is **no genuine issue of material fact**, and the moving party is entitled to judgment as a matter of law. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1220 (Pa. Cmwlth. 2018) (emphasis added). The evidence is to be reviewed in a light most favorable to the non-moving party. *MFW Wine Co.*, 231 A.3d at 56. "Even if the facts are undisputed, the moving party has the burden of proving that its right to relief is so clear as a matter of law that summary relief is warranted." *Naylor v. Dep't of Pub. Welfare*, 54 A.3d 429, 431 n.4 (Pa. Cmwlth. 2012). "Bold unsupported assertions of conclusory accusations cannot create genuine issues of material fact." *McCain v. Pennbank*, 549 A.2d 1311, 1313-14 (Pa. Super. 1988).[10] "Summary [relief] may be entered only in cases that are clear and free from doubt." *Id.* at 1313.

Based on these principles, in order to prevail on the Motion, Riverkeeper must establish that it is clear and free from doubt and that there are no disputed material facts that DEP has a mandatory duty or ministerial act with which it is not

---

[10] While not binding, Superior Court decisions "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

complying, a clear right to relief, and a lack of other adequate or appropriate remedy. DEP asserts that the Motion should be denied because Riverkeeper has failed to establish that there are no genuine issues of material fact in dispute or to prove that its right of relief is clear as a matter of law.

After reviewing the record in the light most favorable to DEP, as the non-moving party, as we must, the parties' arguments, and the standards for granting summary relief, the Court cannot conclude, as Riverkeeper urges, that this dispute is purely legal and that Riverkeeper is entitled to partial summary relief. The very premise of the parties' dispute is DEP's actions, or inaction, in investigating and remediating the Site, a process that is undeniably complex. Riverkeeper is essentially arguing that the interim actions that DEP has taken are, factually, insufficient to resolve the ongoing contamination and remediation of the Site, and, legally, violative of its duties due to their insufficiency. DEP disputes that its actions were factually insufficient to address what is a complex, ongoing process, or that they were legally insufficient to comply with its duties and obligations under the Clean Streams Law, the HSCA, and the Environmental Rights Amendment. Given the complexity of the factual issues and their interconnectedness with the legal issues, it cannot reasonably be said that this matter is clear and free from doubt. *See Romutis v. Borough of Ellwood City*, 246 A.3d 361, 366 (Pa. Cmwlth. 2021) ("[S]ummary [relief] may be entered only in a case that is clear and free from doubt."). Ultimately, a review of the competing allegations reveals that material facts remain in dispute and, therefore, summary relief may not be granted.

While Riverkeeper asserts that DEP has taken no actual action towards remediating the Site and surrounding area, DEP has countered with facts and exhibits that could show that DEP has been working towards a final remedial

14

response to address the contamination. (*See* Motion ¶¶ 6, 11; Answer ¶¶ 70-71.) For example, DEP points to its attempts to remediate the Site by: investigating and categorizing the contamination; directing the owner to plug a leaking pipe to stop discharges of contaminated liquid; instituting the 2007 Interim Response that put the System into place, which "removed hundreds of pounds of chlorinated solvents"; and permitting two PRPs to remove contaminants through an in-situ treatability study. (Answer ¶¶ 3, 6.) As Riverkeeper must establish that DEP's action or inaction demonstrates its noncompliance with its mandatory duties under the Clean Streams Law, the HSCA, and the Environmental Rights Amendment, the extent of DEP's actions in remedying the Site are facts material to Riverkeeper's underlying action that remain in dispute.

Riverkeeper additionally alleges that "source TCE material [] has been left to simply percolate into the ground water and ultimately transport [] into Little Valley Creek and to threaten human health and the environment." (Motion ¶¶ 3, 6.) Riverkeeper further alleges that the wellbeing of children living nearby is at risk because it is well-known that children play in the Little Valley Creek and have gotten onto the improperly secured Site. (*Id.* ¶ 5.) DEP denies that its actions or inactions "have threatened or harmed public health or allowed any contaminant to migrate[.]" (Answer ¶ 3.) DEP notes that the 2019 Remedial Investigation Report determined there was no unacceptable risk to human health, that DEP prevented any such risk when it installed the POET system to protect the drinking water of the one residence at risk, and that some contamination is receding in both the groundwater and surface water. (*Id.* ¶ 9 (citing Armstrong Jan. Dep. at 338-39; Answer Ex. B at 77-78, 147-48, Table B-1).) It also denies the allegations regarding the risk to children, maintaining that it required the Site's owner take steps to secure the Site, which has

been done. (*Id.* ¶ 5.) As one of Riverkeeper allegations is based on DEP's noncompliance with its mandatory duties causing increased health risks, whether such health risks exist are material facts to Riverkeeper's claims that remain in dispute.

Riverkeeper also asserts that DEP's "slow, lethargic, and ineffective" actions establish DEP's noncompliance with its duties under the Clean Streams Law, the HSCA, and the Environmental Rights Amendment. (Motion ¶ 7.) DEP again denies Riverkeeper's assertion of an inappropriate delay or ineffective response, noting that Riverkeeper inhibited DEP's ability to remedy the situation through Riverkeeper's opposition to remediation plans from 2016 to present day, including plans to excavate soil "hot spots," thereby delaying the Site's clean up. (Answer ¶ 7.) DEP also disputes the contention that its efforts have been ineffective, pointing out that, while the System did not work as planned, the System did remove contaminants from the Site, as did the in-situ treatability study implemented on the Site. (Answer ¶¶ 55, 57.) As Riverkeeper alleges, DEP's noncompliance with its mandatory duties is reflected in its delayed and ineffectual response, whether the delays and ineffective results were the result of DEP's action, or inaction, are material facts to Riverkeeper's claims that remain in dispute.

While we acknowledge Riverkeeper's concerns regarding the length of time DEP has taken to remediate the contamination on the Site, summary relief cannot be granted by the Court where issues of material fact remain in dispute as to what DEP has done, or not done, "DEP's diligence in pursuing remediation efforts at the Site," and whether DEP's action, or inaction, has violated the Clean Streams Law, the HSCA, or the Environmental Rights Act. *Riverkeeper I*, slip op. at 13-14, 20, 23. As shown by the Motion and DEP's Answer, the parties continue to disagree as to

16

the material facts, and, as such, those facts remain in dispute. Thus, the resolution of whether DEP has violated these environmental laws must wait until after a trial on the merits of Riverkeeper's Petition and a consideration of what mandatory, rather than discretionary, duties those laws impose on DEP.[11]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Riverkeeper has not established its entitlement to partial summary relief because there remain disputed issues of material fact that must be resolved at a trial on the merits. Accordingly, the Motion is denied.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon and Judge Crompton did not participate in the disposition of this matter.

---

[11] Due to our disposition, we do not address Riverkeeper's other arguments.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delaware Riverkeeper Network, the : 
Delaware Riverkeeper, Maya : 
Van Rossum, and Member, : 
Kathleen Stauffer, : 
                       Petitioners : 
                 : 
            v. : No. 525 M.D. 2017
                 : 
Pennsylvania Department of : 
Environmental Protection, : 
                 Respondent :

## O R D E R

NOW, August 3, 2021, Petitioners' Motion for Partial Summary Relief/Summary Judgment is **DENIED**.

_____
**RENÉE COHN JUBELIRER,** Judge